### NEIL et al. v. UNITED STATES.
#### No. 13109.

United States Court of Appeals
Ninth Circuit.

May 11, 1953.

Preston D. Orem, Los Angeles, Cal., for appellant.

Ellis N. Slack, Acting Asst. Atty. Gen., S. Dee Hanson, Howard P. Locke, Sp. Assts. to the Atty. Gen., Walter S. Binns, U. S. Atty., Edward H. Mitchell, Asst. U. S. Atty., Frank W. Mahoney, Sp. Atty., Bureau of Internal Revenue, Los Angeles, Cal., for appellee.

Before MATHEWS, HEALY and BONE, Circuit Judges.

MATHEWS, Circuit Judge.

This appeal is from a judgment denying recovery of Federal income taxes paid by appellants, William P. Neil and Mary Neil, husband and wife, for the calendar year 1946.

At all pertinent times, appellants were domiciled in California, a community property State.[1] From December 2, 1943, to September 30, 1946, William P. Neil was a member of a partnership called LeRoy D. Owen Company. All income of appellants or either of them, including William P. Neil's share of the partnership's income, was community property of appellants—property in which they had equal interests.

The partnership was a limited one formed under the California Limited Partnership Act[2] by LeRoy D. Owen and Preston D. Orem by signing certificates in duplicate[3] on October 30, 1943. Also, on October 30, 1943, Owen and Orem signed an agreement entitled "Articles of Limited Partnership."[4]

The certificates named Owen as the general partner, named Orem as the limited partner and stated: " * * * The character of the [partnership] business shall be a general business and industrial real estate brokerage business, to include the leasing and sale of buildings and vacant properties, the promotion of building contracts and development of financing when needed. * * * The principal place of business shall be located within the City of Los Angeles, State of California, * * * The term of this partnership shall be from the 1st day of December, 1943, until terminated * * * The limited partner shall contribute as the partnership capital the sum of $5,000, * * * The limited partner may make additional contributions of capital at such times and in such amounts as may be mutually agreed upon, in furtherance of partnership business. * * * The general partner shall receive a salary of $700 per month, payable semimonthly. After deduction of said salary and the other expenses of the partnership, the net profits or losses shall be shared equally by the general and limited partner, and profits may be withdrawn whenever cash is available in excess of partnership requirements. * * * "

The agreement provided: " * * * The general partner agrees to secure a real estate broker's license from the State of California[5] before this partnership shall become effective * * * and to devote his entire time to the management of the partnership affairs. * * * The capital contributions of the limited partner shall bear interest at the rate of 5% per annum to be credited to the account of [the] limited partner monthly."

On December 2, 1943, Orem assigned all of his right, title and interest in the partnership[6] to William P. Neil. There-

1. See California Civil Code, §§ 161, 161a, 687.

2. California Civil Code, §§ 2477–2506 (California Corporations Code, §§ 15501–15531).

3. See California Civil Code, § 2478 (California Corporations Code, § 15502). One of the certificates is in the record on appeal filed here on September 24, 1951, but not in the printed "transcript of record."

4. The agreement is in the record on appeal filed here on September 24, 1951, but not in the printed "transcript of record."

5. Meaning, obviously, a California real estate license. See California Business and Professions Code, §§ 10130, 10131, 10134–10139.

6. See California Civil Code, § 2495 (California Corporations Code, § 15519). The assignment is in the record on appeal filed here on September 24, 1951, but not in the printed "transcript of record."

after, until the partnership was terminated, Owen and William P. Neil were its only members, Owen being the general partner and William P. Neil the limited partner. Owen secured a California real estate license on or before December 3, 1943, and had such a license at all pertinent times thereafter. William P. Neil made two contributions of capital to the partnership—a contribution of $5,000 in December, 1943, and a contribution of $3,000 in 1944. Both contributions, with interest in the sum of $1,007, were repaid to William P. Neil prior to September 30, 1946. The partnership was terminated on September 30, 1946.

Separate original individual income tax returns for 1946 were filed by appellants on March 15, 1947.[7] According to these returns, each appellant's net income for 1946 was $27,809.10, and the tax thereon was $10,974.06. Thus, according to these returns, appellants' net incomes for 1946 aggregated $55,618.20, and the taxes thereon aggregated $21,948.12. The $21,948.12 was paid by appellants—$6,076.16 in 1946 and $15,871.96 on March 15, 1947.[8]

Separate amended individual income tax returns for 1946 were filed by appellants on May 15, 1949.[9] According to William P. Neil's amended return, his net income for 1946 was $23,253.20, and the tax thereon was $8,383.17. According to Mary Neil's amended return, her net income for 1946 was $23,253.19, and the tax thereon was $8,383.17. Thus, according to these returns, appellants' net incomes for 1946 aggregated $46,506.39, and the taxes thereon aggregated $16,766.34.

With their amended returns, appellants, on May 15, 1949, filed claims for refunds aggregating $5,181.78 ($21,948.12 less $16,766.34), each appellant claiming a refund of $2,590.89.[10] The grounds of the claims were, in substance, that appellants' original returns were incorrect, and that their amended returns were correct. Thus, in effect, it was claimed that the $5,181.78 was erroneously paid by and collected from appellants.

On August 4, 1950—more than six months after the claims were filed—no decision on either claim having been rendered by the Commissioner of Internal Revenue, actions to recover the $5,181.78, with interest from March 15, 1947, were brought by appellants against appellee, the United States, in the United States District Court for the Southern District of California.[11] Answers were filed, the actions were consolidated, a trial was had, an opinion was filed, 112 F.Supp. 870, findings of fact and conclusions of law were stated, and on June 7, 1951, the judgment here appealed from was entered.

## I.

The judge who sat on the trial of these actions and all other proceedings therein was District Judge Harry C. Westover, who, from July 1, 1943, to October 31, 1949 —before he became a judge—was Collector of Internal Revenue for the Sixth Collection District of California. He was the collector who collected from appellants the taxes they were seeking to recover. On January 8, 1951—before the actions were consolidated or tried—the following colloquy occurred between the District Court (Judge Westover presiding) and attorneys for the parties:

---

7. Copies of these returns are in the record on appeal filed here on September 24, 1951, but not in the printed "transcript of record."

8. Each appellant paid $10,974.06—$3,038.08 in 1946 and $7,935.98 on March 15, 1947.

9. A copy of William P. Neil's amended return is in the record on appeal filed here on September 24, 1951, but not in the printed "transcript of record." A copy of Mary Neil's amended return is in the record on appeal filed here on September 24, 1951, and in the printed "transcript of record."

10. A copy of William P. Neil's claim is in the record on appeal filed here on September 24, 1951, but not in the printed "transcript of record." A copy of Mary Neil's claim is in the record on appeal filed here on September 24, 1951, and in the printed "transcript of record."

11. There were two such actions—one by each appellant—each seeking recovery of $2,590.89, with interest from March 15, 1947.

"Mr. Orem:[12] I would like to direct attention to the fact that the period during which these taxes were assessed was while the court was Collector of Internal Revenue.

"The Court: Well, I know nothing at all of this case.[13]

"Mr. Orem: I would just as soon keep it here.

"The Court: If you have any objections, I will be glad to transfer it out.

"Mr. Orem: I think we can stipulate—

"Mr. Mitchell:[14] I think it will take two days to try this.

"The Court: First, I want to know, are you willing for this court to try the issues?

"Mr. Mitchell: The Government [appellee] is, of course.

"Mr. Orem: I am agreeable."

Thereupon, on January 8, 1951, the actions were consolidated and set for trial on April 2, 1951. On April 2, 1951, before the trial was begun, the following colloquy occurred between the District Court (Judge Westover presiding) and attorneys for the parties:

"The Court: Before proceeding with this case,[15] I have raised this issue before, and you said you were perfectly willing to continue with the matter. I also want to raise it again, because I don't want you to come in a little later on and say you have been penalized in any way. It appears from the pleadings that when this income tax return[16] was originally filed, I was Collector of Internal Revenue. I said once before I never heard of the case, don't know anything about the case. I don't know any reason in the world why I would be biased or prejudiced for or against either party, but I am bringing it to your attention right now.

"Mr. Orem: At the time before, Mr. Mitchell and myself both indicated we had no objection. In our stipulation of facts,[17] we recite when you were Collector of Internal Revenue, so that again covers it. I again have no objection.

"Mr. Mitchell: No objection on the part of [appellee], your Honor.

"The Court: I want to be sure to have that in the record, because I don't want you a year from now or two years from now to say anything about it."

Nothing further was said about it until June 14, 1951—seven days after the judgment was entered—when appellants, by their attorney, Preston D. Orem, filed (1) a motion to vacate the judgment on the ground that Judge Westover "was disqualified to try the action[18] or to render a judgment therein under the provisions of [28 U.S.C.A. § 455],"[19] (2) a motion to amend the findings and conclusions and (3) a motion for a new trial.

The motions came on for hearing before the District Court (Judge Westover presiding) on July 16, 1951, at which time appellants, by their attorney, Preston D. Orem, made what was, in effect, a re-

12. Preston D. Orem, appellants' attorney.

13. In this colloquy, the two actions were referred to as one case.

14. E. H. Mitchell, one of appellee's attorneys.

15. In this, as in the previous colloquy, the two actions were referred to as one case.

16. In this colloquy, the separate original individual income tax returns filed by appellants on March 15, 1947, were referred to as one return.

17. A stipulation signed by appellants' attorney, Preston D. Orem, and appellee's attorneys, E. H. Mitchell and others, on April 2, 1951. The stipulation and all documents attached thereto were received in evidence as Joint Exhibit No. 1 and are in the record on appeal filed here on September 24, 1951. The printed "transcript of record" contains the stipulation and some, but not all, of the attached documents.

18. In the motion to vacate the judgment, the two actions were referred to as one.

19. Section 455 provides: "Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein."

quest that Judge Westover disqualify himself from hearing the motions—a request purportedly based on 28 U.S.C.A. § 455. Judge Westover denied the request. Thereafter, on July 16, 1951, the District Court (Judge Westover presiding) heard and denied the motions. This appeal followed.

Appellants contend that Judge Westover erred in refusing to disqualify himself from hearing the motions, and that the District Court (Judge Westover presiding) erred in denying the motion to vacate the judgment. There is no merit in either of these contentions. Both assume that Judge Westover was required by 28 U.S.C.A. § 455 to disqualify himself in these cases. The assumption is unwarranted, for it does not appear that Judge Westover had any interest in either of these cases, or that he had been of counsel, or that he was or had been a witness, or that he was so related to or connected with any party or any party's attorney as to render it improper for him to sit on the trial or any other proceeding therein.

■ Appellants do not contend that Judge Westover had been of counsel in either of these cases, or that he was or had been a witness, or that he was so related to or connected with any party or any party's attorney as to render it improper for him to sit. Instead, they contend that, having been Collector of Internal Revenue and having, as such Collector, collected from them the taxes they were seeking to recover, Judge Westover had a substantial interest in these cases. We do not agree. These actions were brought long after Judge Westover ceased to be Collector. They were brought, not against him, but against appellee, the United States. Therefore he had no more interest in them than if he had never been Collector.

■ Furthermore, as indicated above, appellants, on January 8, 1951, and April 2, 1951, consented to Judge Westover's sitting in these cases, despite the fact that he, as Collector of Internal Revenue, had collected the taxes they were seeking to recover. They thereby waived whatever right they may have had to assert that he was disqualified or that he should disqualify himself.[20]

## II.

As indicated above, the taxes appellants were seeking to recover were part of the taxes paid by them on their net incomes for 1946, as computed in their original returns. Appellants claimed that their net incomes for 1946 were incorrectly computed in their original returns and were correctly computed in their amended returns.

In their original returns, in computing their net incomes for 1946, appellants included $28,568.20 described as income from the partnership, $14,284.10 being so included by each appellant. In their amended returns, in computing their net incomes for 1946, appellants included $19,456.39 described as income from the partnership, $9,728.20 being so included by William P. Neil and $9,728.19 being so included by Mary Neil.

■ In computing their net incomes for 1946, appellants were, by law, required to include William P. Neil's distributive share of the partnership's ordinary net income for 1946, computed as provided in § 183(b) of the Internal Revenue Code, each appellant being required to include one-half of that share.[21] Therefore, unless that share was less than $28,568.20, appellants were not entitled to recover any part of the taxes paid by them. Appellants (plaintiffs below) had the burden of proving that that share

---

20. Coltrane v. Templeton, 4 Cir., 106 F. 370; Utz & Dunn Co. v. Regulator Co., 8 Cir., 213 F. 315; Borough of Hasbrouck Heights v. Agrios, D.C.N.J., 10 F.Supp. 371; Lampert v. Hollis Music, D.C.E.D. N.Y., 105 F.Supp. 3.

21. See Internal Revenue Code, §§ 181–183; Treasury Regulations 111, § 29.182–1.

It will be remembered that appellants were husband and wife domiciled in a community property State, and that all income of appellants or either of them, including William P. Neil's share of the partnership's income, was community property of appellants—property in which they had equal interests.

was less than $28,568.20. There was no such proof.

The evidence [22] showed that the partnership's ordinary net income for 1946, computed as provided in § 183(b), was $63,719.67, and that William P. Neil's distributive share of the partnership's ordinary net income for 1946, so computed, was $31,859.83 (one-half of $63,719.67).[23] Thus, instead of showing that that share was less than $28,568.20, the evidence showed that it was more than $28,568.20.

The District Court found that "the net income for the partnership for the period January 1, 1946, to September 30, 1946, was the sum of $63,719.67;" that "$28,568.21 of said income was distributable to William P. Neil;" that "the earned income of the partnership for the year 1946 was $63,719.67;" and that "the distributive share of said earned income of William P. Neil was $28,568.21." [24]

The finding that "the net income for the partnership for the period January 1, 1946, to September 30, 1946, was the sum of $63,719.67" and the finding that "the earned income of the partnership for the year 1946 was $63,719.67" were erroneous in that they failed to state that the partnership's ordinary net income for 1946, computed as provided in § 183(b), was $63,719.67. However, appellants were not prejudiced by this error and do not complain of it.

The finding that "$28,568.21 of said income was distributable to William P. Neil" and the finding that "the distributive share

of said earned income of William P. Neil was $28,568.21" were erroneous in that they failed to state that William P. Neil's distributive share of the partnership's ordinary net income, computed as provided in § 183(b), was $31,859.83. However, appellants were not prejudiced by this error and do not complain of it. Instead, they contend that these findings were erroneous in that they failed to state that William P. Neil's distributive share of the partnership's ordinary net income for 1946, computed as provided in § 183(b), was only $19,456.39. There is no merit in this contention; for, as indicated above, the evidence showed that that share was $31,859.83.

It is immaterial, if true, that only $19,456.39 of William P. Neil's distributive share of the partnership's ordinary net income for 1946, computed as provided in § 183(b), was distributed to him; for, in computing their net incomes for 1946, appellants were required to include all of that share, whether distributed or not.[25]

The partnership's ordinary net income for 1946, computed as provided in § 183(b), consisted largely of real estate brokerage commissions, all of which were earned for the partnership by Owen, who, as indicated above, had a California real estate license.[26] The partnership itself did not, nor did William P. Neil, have any such license.[27] However, that does not alter the fact that the partnership's ordinary net income for 1946, computed as provided in § 183(b), was $63,719.67 or

22. The evidence consisted of Joint Exhibit No. 1 (mentioned in footnote 17) and the testimony of Preston D. Orem, a witness—as well as attorney—for appellants. All parts of Joint Exhibit No. 1 are in the record on appeal filed here on September 24, 1951, and some, but not all, parts of it are in the printed "transcript of record." Orem's testimony is in the supplemental record on appeal filed here on March 26, 1953, but not in the printed "transcript of record." We have examined all the evidence.

23. Under the certificate, the agreement and the assignment mentioned above, William P. Neil and Owen had equal interests in all net income of the partnership.

24. The two findings last above mentioned purported to be conclusions of law.

25. See Internal Revenue Code, §§ 181–183; Treasury Regulations 111, § 29.-182–1.

26. See California Business and Professions Code, §§ 10130, 10131, 10134–10139.

27. Being a limited partner only, William P. Neil had no part in managing, conducting or transacting the partnership business. See California Civil Code, §§ 2477–2506 (California Corporations Code §§ 15501–15531). He contributed to the partnership nothing but capital. He was not a broker and did not act as such.

the fact that William P. Neil's distributive share thereof was $31,859.83.

## III.

On March 7, 1947, William P. Neil brought an action against Owen in the Superior Court of the State of California in and for the County of Los Angeles. In that action, a complaint and three amended complaints were filed.[28] The third amended complaint alleged, in substance, that from December 1, 1943, to September 30, 1946, William P. Neil and Owen "were partners in a general business and industrial real estate brokerage business" at Los Angeles, California, under the name of LeRoy D. Owen Company;[29] that the partnership was not "licensed as a real estate brokerage;" that William P. Neil was not "licensed as a real estate broker;"[30] that Owen was "licensed as a real estate broker" and conducted the partnership business "under said license;" that the partnership was dissolved on September 30, 1946; that on November 21, 1946, William P. Neil and Owen orally agreed upon a division of the partnership assets,[31] all of which were then in Owen's possession; that under the agreement of November 21, 1946, William P. Neil was to receive as his share of the partnership assets certain shares of stock of certain corporations and $8,962.-37 in money; that Owen had delivered the shares of stock to William P. Neil and had paid him $3,962.37 of the $8,962.-37; and that the balance ($5,000) was due and unpaid. The third amended complaint prayed judgment against Owen for $5,000 with interest from November 21, 1946, and costs.

Owen answered the third amended complaint, and the action came on for trial in the Superior Court. Thereupon Owen objected to the admission of any evidence on behalf of William P. Neil, on the ground that the third amended complaint did not state facts sufficient to constitute a cause of action. The Superior Court sustained the objection and, on February 7, 1949, entered a judgment ordering, adjudging and decreeing that William P. Neil take nothing by his action, and that Owen recover costs from William P. Neil.[32] From that judgment William P. Neil appealed to the District Court of Appeal of the State of California in and for the Second Appellate District. However, pending that appeal, the controversy between William P. Neil and Owen was compromised and settled by the payment of $1,000 by Owen to William P. Neil. Thereupon, in October, 1949, the Superior Court's judgment was satisfied, and the appeal therefrom was dismissed.

Appellants here contend that, in view of the Superior Court's judgment, the United States District Court's judgment should be reversed. There is no merit in this contention. The principal question before the United States District Court—whether William P. Neil's distributive share of the partnership's ordinary net income for 1946, computed as provided in § 183(b), was less than $28,568.20— was not involved or decided in the action in the Superior Court. Furthermore, ap-

28. Copies of the pleadings and other papers (including the judgment) in the action in the Superior Court were attached to the stipulation of facts and were part of Joint Exhibit No. 1. See footnotes 17 and 22. These copies are in the record on appeal filed here on September 24, 1951, but not in the printed "transcript of record."

29. Actually, William P. Neil's interest in the partnership was acquired on December 2, 1943.

30. The third amended complaint failed to state that the partnership was a limited one; that William P. Neil was a limited partner only; that he had no part in managing, conducting or transacting the partnership business; that he contributed to the partnership nothing but capital; and that he was not a broker and did not act as such.

31. The third amended complaint said nothing about the partnership's income and, of course, nothing about William P. Neil's distributive share of the partnership's ordinary net income for 1946, computed as provided in § 183(b).

32. The Superior Court's judgment was rendered and filed on February 4, 1949, but was not entered until February 7, 1949.

pellee (defendant in the actions in the United States District Court) was not a party to the action in the Superior Court and is not bound by the Superior Court's judgment.

The United States District Court's judgment is affirmed.