**COMMISSIONER OF INTERNAL REVENUE**

v.

**GOLDBERGER'S ESTATE.**

**TROUNSTINE**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

Nos. 11077, 11110.

United States Court of Appeals Third Circuit.

Argued Jan. 4, 1954.

Decided April 29, 1954.

George B. Levy, New York City, for taxpayers.

Louise Foster, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, Cecelia H. Goetz, Washington, D. C., Sp. Assts. to Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

In 1944 the estate of Norman S. Goldberger received $108,453.59 as a result of a judgment recovered in the United States District Court for the Southern District of New York. That receipt gave rise to these cases, the Commissioner having assessed income tax deficiencies for the year 1944 against both the estate and the beneficiary of a trust set up by Goldberger's will. The Tax Court [1] held that there was no deficiency as to the estate but that the recovery, minus certain deductions, was income to the beneficiary.

The facts were stipulated and were found accordingly by the Tax Court.

In 1933 Goldberger entered into a joint venture with Bauer, Pogue & Co., Inc., a brokerage company, and George E. Tribble. The purpose of the venture was to trade in the stock of Fidelio Brewery, Inc. Each of the venturers contributed a substantial number of Fidelio shares, and Bauer, Pogue & Co., Inc., were the managers of the trading account. By the terms of the agreement, Goldberger was to receive 50/115ths of the net profits of the venture, which was active from June 8 to August 2, 1933. In September of that year, an accounting was rendered to Goldberger which showed that his share of the net profits of the venture was $71,847.58. This sum was paid to him. He died in 1936, believing that the accounting rendered in 1933 was correct. In 1939 his executrix, petitioner Trounstine, discovered that Bauer, Pogue & Co., Inc., had not dealt honestly with Goldberger in 1933. Trounstine brought suit in New York against Bauer, Pogue & Co., Inc., and Bauer, individually, for an accounting of the joint venture profits. Following removal of the suit, the district court found that, during the operation of the joint venture and in violation of its terms, Bauer, Pogue & Co., Inc., and Bauer and Pogue, individually, secretly traded in Fidelio shares and failed to account to Goldberger for the profits of those sales. After an accounting before a special master, the court found that in addition to the sum paid to Goldberger in 1933, he should have received $60,163.73. Final judgment was then entered in favor of the estate.[2] In 1944 the estate received, in satisfaction of the judgment, $108,453.59, which included the $60,163.73 which Goldberger should have received in 1933, plus interest from August 11, 1933, and costs and disbursements. Expenses of the litigation amounted to $64,855.02, leaving a net recovery of $43,598.57.

1. 1952, 18 T.C. 1233.

2. The final judgment is not reported. The interlocutory judgment directing an accounting appears at Trounstine v. Bauer, Pogue & Co., D.C.S.D.N.Y.1942, 44 F. Supp. 767, affirmed 2 Cir., 144 F.2d 379, certiorari denied 1944, 323 U.S. 777, 65 S.Ct. 190, 89 L.Ed. 621.

Petitioner Trounstine is Goldberger's widow and the executrix of his estate. His will left his entire residuary estate in trust for his widow. The trustees were to pay to her all income from the res (with an irrelevant exception), and, if any year's income was less than $12,000, a sufficient amount from corpus to make a total annual payment of $12,000. Prior to receipt of the proceeds of the judgment, Goldberger's entire residuary estate, aggregating $79,272.61, had been paid over to her as trust beneficiary. The net recovery was deposited in an account maintained by her as ancillary executrix between December, 1944, and February, 1945. Between February and May of 1945, that amount was transferred to her domiciliary executrix account, and was transferred to her, individually, between March and May of 1945.

The estate did not file a return for 1944, and Trounstine's 1944 return did not report any of the amount received on the recovery. The Commissioner assessed deficiencies against both the estate and Trounstine and a 25 per cent penalty against the estate for failure to file a return. On petitions for redetermination the Tax Court held that the recovery was gross income to the estate in 1944 but that it was entitled to deduct the litigation expenses and the net amount of the recovery, the latter because it was held to be currently distributable to Trounstine as trust beneficiary. This left no net income to the estate and taxed the net recovery to Trounstine. The result was a determination of no deficiency against the estate, rendering moot the penalty for failure to file, but a deficiency as to Trounstine larger than that assessed. The latter is the petitioner in No. 11,110, and the Commissioner has filed a protective petition for review in No. 11,077.

The Commissioner supports his deficiency assessments by pointing to the general rule that the taxability of the principal amount of recovery in a law suit depends upon the nature of the claim and the basis of recovery. If the claim is for lost profits, the recovery is a taxable gain because it is in lieu of what would have been taxable had it been received without a law suit. If the claim is for loss of, or damage to, capital, the recovery is nontaxable because it is a return of capital. Here, the principal sum recovered was the amount of joint-venture profits wrongfully withheld from Goldberger and, therefore, we are told, there was taxable income. The taxpayers argue, correctly we believe, that the principal sum was taxable income to Goldberger in 1933 and is now beyond reach of the fisc because of the statute of limitations.

The Revenue Act of 1932 governs this phase of the case. Its Section 1111 (a) (3) [3] includes a joint venture within the meaning of the term "partnership." Thus, for simplicity's sake, we will use partnership language here. That Act treated the firm and the individual partners substantially as does the present Code. That is, for income tax purposes, the common law, aggregate theory prevailed. The firm was not a taxable entity; its return was informational only. Sections 181 and 189. Its net income was computed, except as to the deduction for charitable contributions, in the same manner as that of an individual. Section 183. The tax was imposed upon the individual partner, who must include, in computing his net income, his distributive share of the firm's net income, whether or not distributed to him.[4] That is the determinative point here. The joint venture made certain profits in

3. "§ 1111. Definitions.
 "(a) When used in this Act—
 * * * * *
 "(3) The term 'partnership' includes a * * * joint venture * * * and the term 'partner' includes a member in such * * * joint venture." 47 Stat. 169 et seq. (1932).

4. "§ 182. Tax of Partners.
 "(a) General Rule.—There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year. * * *" Ibid.

1933, but Goldberger did not receive his entire share. By the express words of Section 182(a), however, that nonreceipt makes no difference, taxwise. Once the joint venture realized net income, Goldberger became taxable upon his distributive share, in spite of the fact that he did not actually receive it in that year. This court so decided in First Mechanics Bank v. Commissioner of Internal Revenue, 3 Cir., 1937, 91 F. 2d 275, on facts which are on all fours with those of this case. There, the petitioner's decedent was a member of a joint venture which realized income in 1916. A dispute arose between the venturers, and the decedent did not receive any of his share until 1928, and that in a compromise amount, pending appeal from a judgment in his favor. This court held that the decedent had realized taxable income in 1916 in the full amount of his distributive share. That holding governs here. Moreover, in Stoumen v. Commissioner of Internal Revenue, 3 Cir., 1953, 208 F.2d 903, we held that a partner was taxable, in the year of realization by the firm, upon his full distributive share of the firm's net income even though he received very little of his share and was wholly unaware of its existence. On the record in that case, there was every reason to believe that he never would receive his full distributive share. The footnote contains some of the many cases applying the rule of Section 182(a) in a variety of factual settings.[5]

■ But, says the Commissioner, all that Goldberger had in 1933 was an inchoate, contingent claim, which is not income. The leading case of United States v. Safety Car Heating & Lighting Co., 1936, 297 U.S. 88, 56 S.Ct. 353, 80 L.Ed. 500, is relied upon. We think that case and its progeny inapplicable here for the same reason this court held it inapplicable in First Mechanics Bank, supra, 91 F.2d at page 279–280. The Safety Car Heating case did not involve a partnership or joint venture. Here, the profits were realized by the joint venture in 1933. There was nothing conditional or contingent about their receipt. They were earned and paid in 1933. Goldberger, therefore, was legally entitled to his share of those profits and was taxable on that share although he did not actually receive it in that year. The statute made his nonreceipt irrelevant. The fact that he was deceived and was ignorant of the full extent of the gain did not change the fact that profits had been received in 1933 by the joint venture, and his share was income taxable to him in that year.

Swastika Oil & Gas Co. v. Commissioner of Internal Revenue, 6 Cir., 1941, 123 F.2d 382, certiorari denied 1942, 317 U.S. 639, 63 S.Ct. 30, 87 L.Ed. 515, and Parr v. Scofield, 5 Cir., 1950, 185 F.2d 535, certiorari denied 1951, 340 U.S. 951, 71 S.Ct. 571, 95 L.Ed. 686, relied upon by the Commissioner, do not bear on this case. In those cases there was no partnership or joint venture.

■ Finally, we think the Commissioner distorts the nature of the 1944 judgment. He argues that what the estate recovered in 1944 never became joint-venture profits in 1933 but were the profits of the individual wrongdoers,

5. Heiner v. Mellon, 1938, 304 U.S. 271, 58 S.Ct. 926, 82 L.Ed. 1337; Neil v. United States, 9 Cir., 1953, 205 F.2d 121; Caldwell v. United States, 7 Cir., 1939, 102 F.2d 607; Bourne v. Commissioner of Internal Revenue, 4 Cir., 62 F.2d 648, certiorari denied 1933, 290 U.S. 650, 54 S.Ct. 67, 78 L.Ed. 1048; DeCousser, 1951, 16 T.C. 65; Halkias, 1949, 12 T.C. 1091; Freudmann, 1948, 10 T.C. 775; Hoffman, 1943, 2 T.C. 1160, 1174, affirmed, sub nom. Giannini v. Commissioner of Internal Revenue, 9 Cir., 148 F.2d 285, certiorari denied 1945, 326 U.S. 730, 66 S. Ct. 38, 90 L.Ed. 434; Byrd, 1935, 32 B. T.A. 568; Bartlett, 1933, 28 B.T.A. 285, affirmed 4 Cir., 1934, 71 F.2d 601; Steffey, 1931, 23 B.T.A. 913; Dickey, 1929, 14 B.T.A. 1295, affirmed 8 Cir., 56 F.2d 917, certiorari denied 1932, 287 U.S. 606, 53 S. Ct. 10, 77 L.Ed. 527; West, 1928, 12 B.T.A. 725; Faesy, 1925, 1 B.T.A. 350; Truempy, 1925, 1 B.T.A. 349.

made in breach of their fiduciary duty. The opinion and findings of fact in the 1944 action, which are part of the stipulated facts here, and the Tax Court's opinion show, however, that joint-venture profits, made in 1933 but wrongfully withheld from Goldberger in that year, are exactly what the estate recovered in 1944. The fact of their nonappearance on the books of the venture, if it is a fact, is not determinative here, for book entries are "no more than evidential, being neither indispensable nor conclusive." Doyle v. Mitchell Brothers Co., 1918, 247 U.S. 179, 187, 38 S.Ct. 467, 62 L.Ed. 1054; Northwestern States Portland Cement Co. v. Huston, 8 Cir., 1942, 126 F.2d 196, 199; Commissioner of Internal Revenue v. North Jersey Title Ins. Co., 3 Cir., 1935, 79 F.2d 492.

Having been so recently convinced in the Stoumen case, supra, that Section 182 required that the taxpayer lose there, we remain convinced that that section requires that the taxpayers win here. The Commissioner's brief in that case presents a compelling argument in the taxpayers' favor here. Thus, although there may be no requirement that the Commissioner argue consistently from case to case, we must decide consistently, so far as we are able. We hold that $60,163.73, the principal amount of the 1944 judgment, was not taxable income to the estate or Trounstine in 1944 but was income to Goldberger in 1933.

 The amount received included $43,165.61 which represented interest on the principal amount from September 11, 1933. There is no question but that this interest item is income, Section 22(a), 26 U.S.C. § 22(a) (1952); Kieselbach v. Commissioner of Internal Revenue, 1943, 317 U.S. 399, 63 S.Ct. 303, 87 L.Ed. 358, and we agree with the Commissioner that it was taxable in the year of receipt.

Rose, 1947, 8 T.C. 854. The interest did not come through the firm and was not, therefore, subject to the operation of Section 182(a). The taxpayers contend, however, that under Section 42 [6] of the Revenue Act of 1934, Goldberger's death resulted in making the interest for the period from September 11, 1933, to March 3, 1936, the date of his death, a part of his income for the taxable period in which fell the date of his death. Section 42 of the 1936 Act is the applicable statute, but it makes no difference for the two sections are identical. This language first appeared in the Revenue Act of 1934 and was inserted to reach income earned by a cash-basis taxpayer but not received prior to his death. Such income had eluded the Commissioner since it was held not to be income to the decedent prior to his death because not then received nor income to his estate because a part of corpus. 2 Mertens, Law of Federal Income Taxation § 12.100 (1942). Not even the broad meaning of "accrued" given that word in Helvering v. Estate of Enright, 1941, 312 U.S. 636, 61 S.Ct. 777, 85 L.Ed. 1093, however, would encompass an item so contingent as was this interest in 1936. At Goldberger's death he had a cause of action of an equitable nature, a suit for an accounting against his co-adventurers. In equity the allowance of interest is wholly discretionary. Bates v. Dresser, 1920, 251 U.S. 524, 531, 40 S.Ct. 247, 64 L.Ed. 388; In re Paramount Publix Corp., 2 Cir., 1936, 85 F.2d 42, 106 A.L.R. 1116. Thus, even if Goldberger's claim were successfully asserted, it was highly uncertain in 1936 that he would be allowed interest. That question was not shorn of its contingent character until 1944. The interest, therefore, meets the full vigor of the doctrine of United States v. Safety Car Heating & Lighting Co., 1936, 297 U.S.

---

6. "§ 42. Period in Which Items of Gross Income Included.

 "* * * In the case of the death of a taxpayer there shall be included in computing net income for the taxable period in which falls the date of his death, amounts accrued up to the date of his death if not otherwise properly includible in respect of such period or a prior period." 48 Stat. 680 et seq. (1934).

88, 56 S.Ct. 353, 80 L.Ed. 500, and was not taxable income until 1944.

■■ Next, we must dispose of the question of the deductibility of the expenses of litigation. The Commissioner argues that, should any part of the recovery be held not to be gross income to the estate in 1944, then the estate may deduct only so much of the litigation expenses as are properly allocable to 1944 income. Cases are cited that so hold. We think, however, that this argument fails to recognize the reach of Bingham's Trust v. Commissioner of Internal Revenue, 1945, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670, and the Treasury Regulations. In Bingham the Court held that legal expenses incurred by a trust in contesting an income tax deficiency and in making final distribution of the fund were deductible under Section 23(a) (2) [7] of the Code because incurred in management of property held for the production of income. Section 23(a) (2) was said to be comparable and *in pari materia* with the business expense deduction allowed by Section 23(a) (1) (A). Under Bingham a trust is an entity for producing income comparable to a business enterprise, and the particular expense in question may be deductible even though it does not directly produce income if it was incurred to manage or conserve the trust fund. We see no reason to believe that what was said in Bingham was meant to apply only to a trust and would not equally apply to an estate. The executor holds all the estate assets for the ultimate production of income, and all expenses incurred in furtherance of that end are deductible under 23(a) (2). That this was the scope of the Bingham holding was recognized by the Commissioner, for the Regulations [8] were amended to read as quoted below in order to comply with the holding of that case.[9] It is worth noting that the Commissioner makes no attempt to explain away the Regulations or the Bingham case. We hold that the estate was entitled to deduct the full amount of the legal expenses from the interest item. The result is that the estate had a minus net income for 1944. Hence, there was no deficiency as to the estate, and the penalty assessment for failure to file is moot.

■ The Tax Court held that the net recovery was currently distributable to Trounstine as trust beneficiary and that it was, therefore, deductible by the estate and taxable to Trounstine under Section 162(b).[10] We think, however, that that view not only ignores Gold-

7. "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

"(a) Expenses

 * * * * *

"(2) Non-trade or non-business expenses. In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income." 26 U.S.C. § 23(a) (2) (1952).

8. "(i) Reasonable amounts paid or incurred by the fiduciary of an estate or trust on account of administration expenses, including fiduciaries' fees and expenses of litigation, which are ordinary and necessary in connection with the performance of the duties of administration are deductible under this section, notwithstanding that the estate or trust is not engaged in a trade or business, except to the extent that such expenses are allocable to the production or collection of tax-exempt income. * * *" U.S.Treas.Reg. 111, § 29.23(a)–15(i) (1946), 26 Code Fed.Regs. § 29.23(a)–15(i) (1949).

9. T.D. 5513, Int.Rev.Bull. 1946–11, p. 3. The amendment was made retroactive.

10. "§ 162. Net income "The net income of the estate or trust shall be computed in the same manner and on the same·basis as in the case of an individual, except that—

 * * * * *

"(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in

berger's will but rewrites it. By his will nothing was currently distributable by his estate, in any year. The residue of his estate was left in trust. But how determine what is residuary until the executor pays the taxes, debts, expenses of administration, and specific legacies? Thus, the only duty on the executrix was to turn over to the trustees what was finally found to be residuary. Whatever that amount would be, it would be turned over by the estate and received by the trust as corpus. Only in the hands of the trustees was anything currently distributable to the trust beneficiary. The only year involved here is 1944. In that year Trounstine received the total recovery but in her capacity as executrix and in the exercise of her duty to gather the assets of the estate. Consequently, in 1944, the fund did not get into position to be currently distributable to the trust beneficiary, and, in any event, Trounstine would be taxable only upon the amount properly paid or credited out of income of the trust to her as beneficiary.[11] But in 1944 nothing was so paid or credited to her. Thus, she had no taxable income in 1944. Smith's Es-

tate v. Commissioner of Internal Revenue, 6 Cir., 1948, 168 F.2d 431; Estate of Bruner, 1944, 3 T.C. 1051; Buckner, 1941, 45 B.T.A. 544. There is no intimation here that the administration of this estate was unduly or unreasonably delayed, as was the case of Chick v. Commissioner of Internal Revenue, 1946, 7 T.C. 1414, affirmed 1 Cir., 166 F.2d 337, certiorari denied 1948, 334 U.S. 845, 68 S.Ct. 1514, 92 L.Ed. 1769; on the contrary, it was well within the period contemplated by Treasury Regulation 111, Section 29.162–1(i). 26 Code Fed. Regs. § 29.162–1(i) (1949). In the Chick case, the Tax Court and the Court of Appeals upheld the action of the Commissioner in disregarding, for tax purposes, the estate entity and considered the income of the estate as income of the trust.

We find no merit in the Commissioner's reliance on Section 126.

We hold that there was no deficiency against either the estate or Trounstine for 1944. The decision of the Tax Court in No. 11,077, entered December 4, 1952, will be affirmed. The decision of the Tax Court in No. 11,110, entered January 19, 1953, will be reversed.

computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. As used in this subsection, 'income which is to be distributed currently' includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. * * *" 26 U.S.C. § 162(b) (1952).

11. "§ 162. Net income
"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—
* * * * *

"(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, * * * there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary." 26 U.S.C. § 162(c).