ELLIS D. WHEELER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5571–70. Filed June 14, 1972.

Ellis D. Wheeler, pro se.
*Daniel A. Taylor, Jr.*, for the respondent.

FEATHERSTON, *Judge:* Respondent determined a deficiency in petitioner's Federal income tax for 1967 in the amount of $3,711.83 and an addition to his tax under section 6653(a) [1] in the amount of $185.59. Petitioner has conceded certain adjustments, and the only issues remaining for decision are as follows:

(1) Whether petitioner realized income, taxable in part as long-term capital gain and in part as ordinary income, upon the receipt of the payment in 1967 of a judgment which he obtained against S. E. White; and

(2) If petitioner realized income from the payment of that judg-

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue.

ment, whether any portion of such payment is subject to nonrecognition under any section of the Internal Revenue Code of 1954.

FINDINGS OF FACT

At the time petitioner filed his petition, he was a legal resident of Port Arthur, Tex. He filed his individual income tax return for 1967 with the district director of internal revenue, Austin, Tex.

In 1936, petitioner bought a tract of land in Port Arthur, Tex., on which was situated a building known as the Lighthouse Club. The building was used to house a nightclub with a bar and a large dancehall. His cost basis in the property was $47,015.13.

On or about July 26, 1956, petitioner entered into an agreement (hereinafter referred to as the agreement) with S. E. White (hereinafter White), whereby White agreed to secure a loan or furnish the money required to finance the construction of new improvements on petitioner's land. In reliance upon this agreement, petitioner, in 1956 or 1957, demolished the Lighthouse Club building to make way for construction of the new improvements.

Thereafter, White failed or refused to perform his obligations under the agreement. Petitioner brought an action against White in the District Court of Jefferson County, Tex., cause No. B-72,198, for damages for breach of contract. The District Court dismissed the action, and its judgment was affirmed by the Court of Civil Appeals of Texas. 385 S.W.2d 619 (1964). In 1965, however, the Supreme Court of Texas reversed, holding that petitioner had a cause of action against White under the doctrine of promissory estoppel and could recover the value of the demolished building as of the date of its demolition. 398 S.W.2d 93.

In the meantime, petitioner sold the land on which the Lighthouse Club building had been situated for a net sales price of $28,160.45. In his income tax return for 1958, petitioner reported a long-term capital gain on the sale of the land in the amount of $7,598.19. Such gain was computed on the basis of the net sales price less petitioner's adjusted basis of $20,562.26. Petitioner's adjusted basis was computed by reducing his cost basis of $47,015.13 by depreciation allowed, or allowable, on the Lighthouse Club building in the amount of $26,452.87.

On January 23, 1967, petitioner's action against White was tried in the District Court in accordance with the opinion of the Supreme Court of Texas. The jury returned a verdict that the value of the Lighthouse Club building immediately prior to its demolition was $30,000. On February 3, 1967, judgment was entered against White

awarding petitioner $30,000, together with interest thereon from January 27, 1957, to January 27, 1967, in the sum of $18,000, plus interest at the rate of 6 percent per annum until paid.

During 1967, White paid petitioner a total sum of $49,365.55 in satisfaction of the judgment. After payment of attorneys' fees and other legal expenses, petitioner's net proceeds from the judgment were $32,-726.64. During that year, petitioner invested a part of these funds (approximately $19,000) in a motel with a bar and dance area.

Petitioner did not report any part of the judgment proceeds in his 1967 income tax return. In the notice of deficiency, respondent determined that (1) the net amount of the judgment was includable in petitioner's gross income, and (2) the legal expenses should be deducted therefrom on a basis which prorated them between principal and interest. Under this formula, respondent determined that petitioner realized long-term capital gain in the amount of $19,895.19 and ordinary interest income in the amount of $12,831.45.

OPINION

All the disputed issues relate to the proper tax treatment of the judgment proceeds which petitioner received from White. Respondent maintains that he correctly determined that the amount which petitioner received is taxable, partially as ordinary income and partially as capital gain, and that the costs of obtaining the judgment are to be allocated ratably to the two categories of income. Petitioner contends that the recovery amounts to nothing more than a return of his capital investment and, therefore, does not constitute taxable income. At most, he asserts, the full amount which he received should be taxed at capital gain rates since the lawsuit was equivalent to a forced sale of his building. Finally, he urges that he need not recognize any gain from the "sale" in 1967 since he reinvested the proceeds in "near-similar" property. We are unable to agree with any of petitioner's contentions.

Amounts received in satisfaction of a judgment are taxed in the same manner as the proceeds would have been taxed if voluntarily paid. *Hort* v. *Commissioner*, 313 U.S. 28 (1941). The nature of the claim and the actual basis of recovery determine the taxability of such proceeds. *Sager Glove Corporation*, 36 T.C. 1173, 1180 (1961). To the extent that a judgment substitutes for a capital asset, an amount equal to the taxpayer's basis in the asset is recoverable tax-free and any excess is taxable at capital gain rates. *Big Four Industries, Inc.*, 40 T.C. 1055, 1060 (1963), acq. 1964-1 C.B. (Part 1) 4. On the other hand, any portion of a judgment which compensates a taxpayer for the lost use of his money substitutes for interest and is taxable as ordinary income. *Kieselbach* v. *Commissioner*, 317 U.S. 399, 403 (1943); *Spangler* v. *Commissioner*, 323 F. 2d 913, 916 (C.A. 9, 1963),

affirming a Memorandum Opinion of this Court; *Commissioner* v. *Goldberger's Estate*, 213 F. 2d 78, 83 (C.A. 3, 1954), affirming on this point 18 T.C. 1233 (1952). Ordinarily, interest is received pursuant to a contractual promise, but a taxpayer may realize interest income from a nonconsensual withholding of his property. *320 East 47th Street Corp.* v. *Commissioner*, 243 F. 2d 894, 896 (C.A. 2, 1957), reversing on another issue 26 T.C. 545 (1956).

Looking to the judgment which petitioner obtained against White, it is quite apparent that only $30,000 was awarded as compensation for the building. This is the amount which the jury found to be the value of the building as of the date of its demolition. The evidence clearly establishes that prior to 1967, the year in which petitioner received the proceeds of his lawsuit, he had recovered his entire investment in the property, either through allowances for depreciation or as an offset against the amount realized from the sale of the land in 1958. Since petitioner thus had an adjusted basis of zero in the building, the amount he received as compensation for it (reduced by a proportionate part of the legal expenses) is fully taxable at capital gain rates.

The remainder of the judgment proceeds, designated as interest, compensated petitioner for the delay in receiving payment of the damages which he suffered. The interest portion of the proceeds (reduced by a proportionate part of the legal expenses) must be included in his income and taxed at ordinary rates.

Finally, there is no nonrecognition provision which applies to the proceeds of petitioner's lawsuit. Section 1031 [2] does not apply because there was no exchange of the Lighthouse Club building property for property of a like kind. Rather, petitioner sold the property for cash which he subsequently reinvested. The law is well settled that a sale of property and repurchase of other property do not qualify for nonrecognition treatment under section 1031. *Carlton* v. *United States*, 385 F. 2d 238, 241 (C.A. 5, 1967) ; *John M. Rogers*, 44 T.C. 126, 133 (1965), affd. 377 F. 2d 534 (C.A. 9, 1967).

Nor does section 1033 apply. That section provides that "If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted" into money, the gain resulting from the conversion shall be recognized only to the extent the tax-

---

[2] SEC. 1031. EXCHANGE OF PROPERTY HELD FOR PRODUCTIVE USE OR INVESTMENT.

(a) NONRECOGNITION OF GAIN OR LOSS FROM EXCHANGES SOLELY IN KIND.—No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.

payer does not purchase "other property similar or related in service or use to the property so converted." The transaction involved in this case is not the kind referred to in that section.

The statutory language referring to the "destruction in whole or in part" of property was originally enacted as part of section 214(a)(12) of the Revenue Act of 1921, 42 Stat. 241, the predecessor of section 1033. The congressional reports accompanying that Act explain that this language was intended to provide for the nonrecognition of gain "when property is involuntarily converted into cash as a result of fire, shipwreck, condemnation, or related causes" and later reinvested in similar property. S. Rept. No. 275, 67th Cong., 1st Sess. (1921), 1939-1 C.B. (Part 2) 191; H. Rept. No. 486, 67th Cong., 1st Sess. (1921), 1939-1 C.B. (Part 2) 209. Congress clearly intended to extend the benefits of section 1033 and its predecessors only to public takings and casualty-like conversions, and the limitation of its benefits to involuntary conversions—i.e., those "wholly beyond control of the one whose property has been taken"—reflects that intent. *Dear Publication & Radio, Inc.* v. *Commissioner*, 274 F. 2d 656, 660 (C.A. 3, 1960), affirming 31 T.C. 1168 (1959).

In the instant case, petitioner deliberately and voluntarily demolished his building. This was not a casualty or an event similar to one. Consequently, we are unable to find that this transaction is within the purview of section 1033.

Moreover, the evidence does not show that petitioner reinvested the proceeds from his lawsuit in property "similar or related in service or use" to the demolished building. Sec. 1033(a)(3). To meet this requirement, the use made of the replacement property by the taxpayer must be similar to that which he made of the original property. *Filippini* v. *United States*, 318 F. 2d 841 (C.A. 9, 1963); *Harvey J. Johnson*, 43 T.C. 736 (1965). Where the taxpayer actually operates a business on property which is involuntarily converted into cash, he must reinvest such cash in property used in substantially the same business. *Liant Record, Inc.* v. *Commissioner*, 303 F. 2d 326, 328-329 (C.A. 2, 1962), reversing and remanding 36 T.C. 224 (1961), and the cases cited; *Denny L. Collins*, 29 T.C. 670 (1958).

In the instant case, the record contains no detailed description of the two pieces of real estate in question, the Lighthouse Club and the motel. Nor does the record show, except in general terms, the kinds of businesses conducted at the two locations. We are compelled to conclude that petitioner has not shown that the two properties were "similar or related in service or use" within the meaning of section 1033. *Welch* v. *Helvering*, 290 U.S. 111 (1933).

*Decision will be entered for the respondent.*