ROBERT J. RECIO AND LINDA BAILEY-RECIO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Recio v. Commissioner
Docket No. 29628-89
United States Tax Court
T.C. Memo 1991-215; 1991 Tax Ct. Memo LEXIS 238; 61 T.C.M. (CCH) 2626; T.C.M. (RIA) 91215; May 16, 1991, Filed *238 Decision will be entered for the respondent. Robert J. Recio and Linda Bailey-Recio, pro se. Carmino J. Santaniello, for the respondent. POWELL, Special Trial Judge. POWELL
MEMORANDUM OPINION This case was assigned and heard pursuant to section 7443A(b)(3) and Rule 180 et seq. [1]
Respondent determined a deficiency in petitioners' joint Federal income tax for 1985 in the amount of $ 2,093. Following a concession by petitioners, the issue for decision is whether petitioners may defer the recognition of gain realized on the sale of their principal residence under section 1033. Petitioners resided in Brookfield, Connecticut, at the time they filed their petition in this case. The case was submitted to the Court on a full stipulation of facts. On July 1, 1982, petitioners acquired their principal residence located at 4 *239 Pine Tree Road, Monroe, Connecticut (Monroe property), for the purchase price of $ 67,000. Petitioners financed the acquisition of the property through a mortgage in the amount of $ 60,300 from the People's Saving Bank-Bridgeport. On April 8, 1982, petitioner Robert J. Recio obtained a Master Card through Westport Bank. On June 30, 1982, petitioners borrowed $ 8,000 from the Westport Bank and Trust Company (Westport Bank). This was an unsecured demand loan with interest payable at an annual rate of 17 percent. Subsequently, petitioners and the Westport Bank informally agreed that the loan would not be called while monthly payments were current. On November 26, 1982, petitioner Robert J. Recio borrowed $ 7,000 from Westport Bank to finance the purchase of a 1969 Porsche automobile. In September of 1984, Westport Bank made demand for immediate payment of all outstanding obligations under the Demand Unsecured Note, Promissory Loan and Security Agreement, and Master Card Agreement. Although petitioners were not in arrears under the Demand Unsecured Note, payments under the Promissory Loan and Master Card Agreement were slightly past due at that time. Petitioners were in the process *240 of refinancing their indebtedness at the People's Saving Bank at the time Westport Bank made its demand for payment. By October of 1984, petitioners' total debt to Westport Bank exceeded $ 14,000. On October 17, 1984, Westport Bank commenced legal proceedings against petitioners to recover the unpaid amounts by obtaining a prejudgment attachment in the Monroe property. Westport Bank also informed petitioners that it would foreclosure against the Monroe property if petitioners did not make immediate steps to sell the property. On November 2, 1984, the Superior Court granted the application by Westport Bank for prejudgment remedy. As a result of Westport Bank's collection activities, petitioners were unable to refinance their indebtedness to Westport Bank. Westport Bank never actually commenced foreclosure proceedings. On March 6, 1985, petitioners, under the threat of foreclosure by Westport Bank, sold the Monroe property for the sales price of $ 90,000. Petitioners used a portion of the proceeds to satisfy their liability of $ 14,504 to the Westport Bank. On April 26, 1985, petitioners purchased a new home at 25 Tel Road, Bennington, Vermont for the purchase price of $ 63,990. *241 Petitioners used a portion the proceeds from the sale of the Monroe property for the down payment on the new residence. On Form 2119 attached to their 1985 return, petitioners reported a gain on the sale of the Monroe property in the amount of $ 4,985.41, which they alleged to be deferred under section 1033 as an involuntary conversion. By notice of deficiency dated September 19, 1989, respondent determined petitioners recognized a taxable gain on the sale of the Monroe property in the amount of $ 6,425. Section 1033(a) provides that if property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, no gain or loss shall be recognized. Petitioners' first argument is that the prejudgment attachment by Westport Bank constitutes a "seizure" of the property within the meaning of section 1033 and therefore the gain can be deferred under section 1033. The Court notes that neither party has cited a definition of "seizure" in the legislative history of section 1033 or its predecessors. *242 Likewise, the Court's research has not uncovered any legislative guidance on this issue. The Court, however, notes that the term "seizure," as used in the context of section 1033, is generally used as a synonym for "condemnation," i.e., a public taking. See Wheeler v. Commissioner, 58 T.C. 459 (1972); Weil Inc. v. Commissioner, 150 F.2d 950 (2d Cir. 1945); Rev. Rul. 54-594, 1954-2 C.B. 10. Here, the action was taken by a private party and thus would not be a seizure as generally used in this context. Petitioners rely upon Pinsky v. Duncan, 898 F.2d 852 (2d Cir. 1990), as support for their position that a prejudgment attachment is a seizure. In Pinsky v. Duncan, supra, the United States Court of Appeals for the Second Circuit addressed the issue whether Connecticut's Prejudgment Remedy Statute, Conn. Gen. Stat. sec. 52- 278e(a) (1), violated the due process clause of the 14th amendment. The Court first described a prejudgment attachment as "an extraordinary prejudgment remedy that enables a plaintiff to secure a contingent lien on defendant's property at the inception *243 of a lawsuit." Pinsky v. Duncan, supra at 853. The Court then stated that "although an attachment of real estate does not deprive the landowner of the use and possession of his property, and thus does not amount to a 'seizure' in the literal sense, it nevertheless has a significant impact on the owner's ability to exercise the full scope of his property rights." Pinsky v. Duncan, supra at 854. The Court further noted that "Given a particularly unlucky set of circumstances, even a temporary attachment can lead to foreclosure proceedings against the homeowner." Pinsky v. Duncan, supra at 856
Petitioners argue that, based upon this language, a prejudgment attachment constitutes a 'seizure' within the meaning of section 1033. We disagree. The Second Circuit explicitly stated that an attachment of real estate is not a seizure but is, rather, a restriction on the owner's ability to exercise the full scope of his property rights. Section 1033 operates only if a "seizure" has occurred; a restriction on the owner's ability to exercise the full scope of his property rights is not sufficient to invoke section 1033. It is well *244 established that a foreclosure or a threat of foreclosure is not an involuntary conversion within the meaning of section 1033. Cooperative Publishing Co. v. Commissioner, 115 F.2d 1017 (9th Cir. 1940), revq. on other grounds, 40 B.T.A. 466 (1939). [2] It follows that if the actual foreclosure on property is not a seizure within the meaning of section 1033, a lesser restriction on the property rights of the owner which only may lead to foreclosure is not a seizure.
Petitioners' second argument is that the repayment of a loan is not income to the borrower and, therefore, they did not realize income when they repaid their loans. While petitioners' argument may be correct, it is non sequitur here. Respondent based his determination on petitioner's gain resulting from the sale of the house, not on the repayment of the loans. Gain on the sale of property *245 is income to the seller. Secs. 61(a)(3) and 1001. The fact that the funds were used to repay a loan is, in this case, irrelevant. Petitioners' final argument is that respondent is estopped from rejecting petitioners' claim that the gain on the sale of the house can be deferred under section 1033. Petitioners assert that had respondent informed them that their claim under section 1033 would be denied, they would have increased their investment in their new home. This would have enabled them to defer their gain under section 1034, which allows taxpayers to rollover their gain on the sale of their principal residence. It is well established that the estoppel doctrine should be applied against respondent with the utmost caution and restraint. Schuster v. Commissioner, 312 F.2d 311 (9th Cir. 1962); Boulez v. Commissioner, 76 T.C. 209, 214-215 (1981), affd. 258 U.S. App. D.C. 90, 810 F.2d 209 (D.C. Cir. 1987); Estate of Emerson v. Commissioner, 67 T.C. 612, 617 (1977); Hudock v. Commissioner, 65 T.C. 351 (1975). The essential elements of estoppel are (1) there must be a false representation or wrongful misleading *246 silence; (2) the error must originate in a statement of fact and not in an opinion or statement of law; (3) the person claiming the benefits of estoppel must be ignorant of the true facts; and (4) he must be adversely affected by the acts or statements of the person against whom an estoppel is claimed. Lignos v. Commissioner, 439 F.2d 1365, 1368 (2d Cir. 1971); Estate of Emerson v. Commissioner, supra at 617-618. Petitioners have not satisfied a single element of their claim to equitable estoppel. First, petitioners' statement that respondent's silence was wrongful and misleading is conclusory. While respondent did not question petitioners' claim for two years, his silence was neither wrongful nor misleading. The Court perceives no deceit in respondent's silence. Second, equitable estoppel applies only if one party misrepresents facts to the other party. Whether section 1033 applies to a given set of facts is an issue of law, not an issue of fact. Accordingly, respondent could not have made a factual misrepresentation to petitioners and the second element is not satisfied. Third, petitioners were not ignorant of the true facts of the *247 case. On the contrary, the facts of this case were uniquely in the hands of petitioners. Respondent did not have access to these facts until after the audit. Thus, the third element is not satisfied. Fourth, petitioners have not shown that they were adversely affected by respondent's silence. The Court will not speculate as to what petitioners would have done had respondent challenged the claimed deferral earlier. Thus, the fourth element is not satisfied. Based on the foregoing, we sustain respondent's determination in this case. Accordingly,
Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code, as amended and as in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Johnson v. Commissioner, T.C. Memo 1983-46; Woolf v. Commissioner, T.C. Memo 1981-286↩.