SAGER GLOVE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 75057. Filed September 29, 1961.

*Llewellyn A. Luce, Esq.,* for the petitioner.

*David H. Nelson, Esq.,* and *Seymour I. Sherman, Esq.,* for the respondent.

ATKINS, *Judge:* The respondent determined a deficiency in income tax in the amount of $167,735.33 for the taxable year 1951.

The issue is whether the full amount of $478,142 received by petitioner in 1951 in settlement of an antitrust suit is taxable as ordinary income as determined by respondent or whether $346,142 thereof constitutes nontaxable return of capital as contended by petitioner.

Adjustment will be made under Rule 50 in accordance with agreement between the parties as to other issues.

FINDINGS OF FACT.

Some of the facts are stipulated, and the stipulations, including the stipulated exhibits, are incorporated herein by this reference.

Petitioner is a corporation organized under the laws of the State of Illinois in September 1921 as the Sager Mercantile Company. On April 1, 1929, its name was changed to the Sager Glove Corporation. At all times pertinent hereto it maintained its principal office and place of business in Chicago, Illinois. Its corporate income tax return for the calendar year 1951 was filed with the director of internal revenue for the first district of Illinois.

During the year 1951, Samuel N. Sager owned 67 percent and his wife, Clara M. Sager, owned 33 percent of the outstanding stock of petitioner. Samuel N. Sager was the president and treasurer of petitioner and in active control of its business affairs. Clara Sager was its secretary.

Since 1926 petitioner has been engaged in the business of manufacturing and selling safety material, equipment, clothing, and protective apparel for the protection of the entire body of the worker in industry, including leather and asbestos gloves, mittens, hand pads, and wool and fireproof garments. Since 1931 it has also engaged in the development, manufacture, and sale of industrial safety goggles to protect the eyes of workers engaged in hazardous and semihazardous occupations.

On or about October 14, 1940, the petitioner filed in the District Court of the United States for the Northern District of Illinois, Eastern Division, pursuant to section 15, title 15, U.S.C., a complaint

under the antitrust laws against Bausch & Lomb Optical Company, a corporation, American Optical Company, an association, and American Optical Company, a corporation, alleging that its business and property were damaged by the acts of the defendants. On or about February 15, 1954, it filed an amended complaint in the suit setting forth three counts. The first count alleged violations of the Act of Congress of July 2, 1890 (15 U.S.C. secs. 1–7), commonly known as the Sherman Act. The second count alleged violations of the Act of Congress of October 15, 1914, commonly known as the Clayton Act. The third count alleged violations of the Act of Congress of July 19. 1936, commonly known as the Robinson-Patman Act. Each count states, in pertinent part, as follows:

on October 16, 1935, the defendant, BAUSCH & LOMB, notified the plaintiff by its communication that it would not sell any of its merchandise to the plantiff, and would not accept any further orders from it. Thereafter said defendant refused to sell any more lenses to the plaintiff except that it filled the existing orders. Because of this shutting off of its only available source of supply of lenses plaintiff was forced to cancel its contract with General Motors Corporation, losing thereby many thousands of dollars in profits; it was forced to stop soliciting; refused orders and lost many of the customers which it had developed during the preceding years and was destroyed completely as a competitor in the industrial goggle field. * * *

For the purpose of monopolizing the trade, and to eliminate the plaintiff as a competitor, the defendant, BAUSCH & LOMB, set up the Kimball Safety Products Company at Cleveland, Ohio in the middle of the year 1937, and the defendant, AMERICAN OPTICAL COMPANY, acquired the interest of the Safety Equipment Service Company at Cleveland, Ohio, to compete with the plaintiff in the general safety equipment field, and as an outlet for its industrial lenses. From then on to this day the defendant, BAUSCH & LOMB, has used the Kimball Safety Products Company, and the defendant, AMERICAN OPTICAL COMPANY, has used the Safety Equipment Service Company for the purpose of ultimately driving the plaintiff out of the safety clothing business through destructive price-cutting tactics. By means of the wide contact with industrial users of safety equipment developed by it through the Kimball Safety Products Company, the defendant, BAUSCH & LOMB, endeavored to destroy plaintiff's business, in order to gain for itself and for the Kimball Safety Products Company the more lucrative industrial goggle business. * * *

* * * The aim and purpose of the defendants is to monopolize for themselves and their own agencies and distributors the manufacture, sale and distribution of industrial safety lenses and goggles, and especially to drive out, through their control of the only sources of supply of lenses used in industrial goggles, all independent manufacturers of such goggles who refuse to maintain the prices fixed by them, and by such means and as a result of such conspiracy, combination and monopoly, the said defendants have attempted, and have succeeded, to destroy a part of plaintiff's business, and have eliminated him as a competitor in the production of industrial safety goggles in the United States.

The conspiracy, combination and monopoly hereinbefore described is a continuing one and defendants intend to carry it out and will continue to do so

unless enjoined by this Court. The unlawful restraints, acts, methods and practices pursuant thereto are continuing daily and are daily causing injury to plaintiff's business and property; plaintiff has suffered, is suffering and will continue to suffer immediate great and irreparable loss, damage and injury to its business and property by reason thereof, unless the defendants are enjoined by this Court.

The damages to plaintiff to date include among other things:

(a) sums spent in research, equipment, molds, dies, machinery, salaries, commission, drawing accounts, advertising and in developing the manufacture, sale and distribution of goggle cups and frames and in promoting the marketing of the goggles;

(b) large sums in extra expense in fighting the destructive competitive tactics of the American Optical Company and Bausch & Lomb through the Kimball Safety Products Company and the Safety Equipment Service Company in the general safety equipment field;

(c) loss of other valuable and profitable contracts and orders when Bausch & Lomb refused to sell any more lenses;

(d) payment of excessive and unreasonable prices for lenses purchased from Bausch & Lomb;

(e) loss realized on the liquidation of the excessive stock of lenses forced upon plaintiff in 1934 and 1935;

(f) loss of the just fruits of plaintiff's labor, industry and effort;

(g) loss of profits on being forced to cancel the contracts to supply the goggle requirements of General Motors Corporation;

(h) loss of regular and anticipated profits from the sale of industrial safety goggles which plaintiff would reasonably have made but for the unlawful acts of defendants as aforesaid, including profits which plaintiff might reasonably have made, after defendants had unlawfully eliminated it as a competitor;

(i) loss of profits due to the necessity of meeting the cut-throat price competition of Kimball Safety Products Company and Safety Equipment Service Company operated and controlled by the defendants, BAUSCH & LOMB and AMERICAN OPTICAL COMPANY in the general safety equipment field.

In the complaint the petitioner did not set forth the specific amount of damage suffered for which judgment was requested, the prayer for relief in regard to damages being as follows:

That judgment as provided by law be granted to it against the defendants, and each of them for all damages and injuries as aforesaid, and to be sustained, by reason of said conspiracy, combination and monopoly, and unlawful restraints, acts, methods and practices pursuant thereto, as hereinbefore described; that such damages be made threefold; that the plaintiff recover the costs of this suit, including a reasonable attorney's fee, all in accordance with the statute in such case made and provided.

On November 14, 1944, the District Court entered a judgment dismissing petitioner's complaint. Petitioner appealed to the United States Court of Appeals for the Seventh Circuit from the order of dismissal, and on June 9, 1945, the Court of Appeals entered a judgment reversing the judgment of the District Court insofar as it dismissed the first count of the complaint, but otherwise affirming the judgment of the District Court. Thereafter trial was had in the District Court. At such trial Sager testified that the estimated profits which the petitioner, but for the acts of the defendants, would have

earned from the sales of goggles and lenses over the period 1936 through 1943, were $346,132, that this was arrived at by a computation using a percentage of the gross amount of sales of petitioner's safety clothing business and that the amount of damages requested was based upon such estimated profits. His computation of the estimated profits was introduced in evidence in that case. At such trial Sager also testified that the petitioner purchased various equipment and tools for the goggles business and named four companies, General Motors Corporation, Chrysler Corporation, E. H. Dockson Company, and General Rubber Goods Company, with which petitioner had contracts to supply goggles or lenses.

The District Court judge instructed the jury in part as follows:

The first disputed issue is the allegation or claim of the plaintiff that a conspiracy existed in 1935 between the defendants American Optical Company and Bausch & Lomb, to violate the Sherman Act, namely, to monopolize and restrain interstate trade and commerce by fixing the prices of industrial goggles and lenses.

The second disputed issue is the allegation of the plaintiff that there was an overt act done pursuant to the alleged conspiracy to plaintiff's damage, that is, that it was deprived of a supply of lenses for industrial goggles as a result of the alleged conspiracy, and that the deprivation damaged it in its business or property.

And the third issue is one that you would reach only if you should find in the affirmative as to the two preceding issues or claims of the plaintiff. The third issue is the amount, if any, that the plaintiff has been damaged as a result of an alleged act done pursuant to the alleged conspiracy; that is, you are to determine the amount of damages the plaintiff company suffered in the event you should find that the conspiracy which I have mentioned existed, and if you should further find that the plaintiff company was damaged as a result of an act done pursuant to a violation of the Anti-Trust Laws.

\* \* \* \* \* \* \*

If you find that the conspiracy as charged in the complaint was entered into between the defendants and that the plaintiff was excluded from the industrial goggles business as a result thereof, then it will become your duty to ascertain what, if any, damages plaintiff sustained as a direct and proximate result thereof. While the statute under which plaintiff is suing provides for a judgment in which the damages are trebled or three times the actual damage, it is not your responsibility to determine the amount of the judgment. You are simply called upon to find from the evidence what, if any, are the actual damages to the plaintiff. In this connection you may consider only those damages, if any, which proximately resulted from the wrongful acts, if any, of the defendants complained of. Speculative or uncertain damages are not recoverable. Damages must be such as are shown by a preponderance or greater weight of the evidence to be logically and legally inferable from the facts proved. Damages are not rendered speculative or uncertain, however, because they cannot be established with absolute exactness. It is sufficient if a reasonable basis for computation is afforded by the evidence.[1]

[1] The District Court judge also instructed the jury to disregard, in determining whether plaintiff is entitled to recover, the allegation in the amended complaint that the defendants used Safety Products Company and Safety Equipment Service Company for the purpose of ultimately driving the plaintiff out of the safety clothing business through destructive price-cutting tactics, since no evidence had been adduced to support such allegation.

On August 10, 1951, the jury found the defendants Bausch & Lomb Optical Company, a corporation, and the American Optical Company, an association, guilty and assessed damages against the defendants in the amount of $325,000. On the same date, the court entered its judgment for the plaintiff in the amount of $975,000 (being 3 times the sum of the jury's verdict), together with costs and charges. Thereafter the District Court entered its order determining an allowance to petitioner for attorneys' fees in the amount of $132,000, and for costs in the amount of $1,833.

On December 14, 1951, the District Court entered an order denying motions of the defendants for a summary judgment and for judgment notwithstanding the verdict, but granting their motion for a new trial. However, a new trial was not had. Instead, the suit was settled by the parties out of court. On December 19, 1951, the petitioner as plaintiff in that cause, by its president Samuel N. Sager, signed a general release which provided in part as follows:

WHEREAS, upon the trial of said cause, plaintiff claimed damages for the period commencing January 1, 1936 through December 31, 1943, in the amount of $346,142.00; and

WHEREAS, the court in said proceeding fixed the reasonable attorneys' fees of plaintiff in the sum of $132,000.00; and

WHEREAS, a new trial has just been ordered in the said cause; and

WHEREAS, the parties to said cause have agreed to settle their differences; and

WHEREAS, the defendants have denied any liability to plaintiff but are desirous of avoiding the expense of a new trial and possible appeal and further litigation and unfavorable publicity, and plaintiff is willing to accept the sum of $478,142.00 in full settlement, satisfaction and discharge of any and all claims, actions, damages, or demands (without limitation to the claims, actions, damages, and demands set forth in the above mentioned cause) * * *.

Now, THEREFORE, in consideration of the sum of $478,142.00 in hand paid to the plaintiff by the defendants, * * * THE SAGER GLOVE CORPORATION does * * * hereby release and forever discharge the BAUSCH & LOMB OPTICAL COMPANY and AMERICAN OPTICAL COMPANY, * * * of and from any and all manner of actions, causes of action and suits in law or in equity, judgments, claims and demands, which plaintiff, * * * now have, had, or may have had against the defendants, * * * and from all damages now sustained or which may hereafter be sustained by the plaintiff, for and by reason of or growing out of, or which may hereafter grow out of, any matter or thing whatsoever from the beginning of time up to the day of the date hereof * * *.

* * * * * * *

It is understood and agreed by the plaintiff that this release is given and settlement herein made in compromise of doubtful and disputed claims, and that neither the acceptance of this release, nor the payment of the consideration aforesaid therefor shall be construed as an admission of liability on the part of the defendants, their subsidiaries, affiliates, officers, directors, trustees, representatives, agents, employees, servants, successors or assigns; it is further understood and agreed by the plaintiff that said defendants expressly deny liability as to all the matters and things hereby released, and that the foregoing terms of this release are contractual, and not mere recitals.

Samuel N. Sager, although he signed the release as president of the petitioner, did not participate in the settlement negotiations, these being conducted by the attorneys in the case.

On December 19, 1951, the District Court entered an order of dismissal of the civil action with prejudice, pursuant to stipulation of the parties. On or about December 19, 1951, the petitioner received payment from Bausch & Lomb Optical Company and American Optical Company of the full amount of $478,142 as set forth in the general release.

In December 1951, the petitioner paid to its attorneys in the antitrust suit the sum of $151,971.

On its income tax return for the taxable year 1951 petitioner reported as ordinary income the amount of $159,380, or about one-third of the total settlement, as "Judgment award—Anti-Trust Suit—Federal Court." The balance of the settlement received, $318,762, was reported by petitioner on its return as nontaxable income with the explanation "Punitive damages awarded in Federal District Court for Anti-Trust Suit." In such return the petitioner deducted the attorneys' fees of $151,971.

In the notice of deficiency the respondent did not disallow the claimed deduction for attorneys' fees. However, he held:

that the full amount of $478,142.00, received by the corporation in 1951 in settlement of an anti-trust suit constitutes ordinary income in full to it for the year 1951 under the provisions of Section 22 of the Internal Revenue Code of 1939. Accordingly, it is held that in addition to that part of the settlement proceeds, or $159,380.00, which the corporation included in its taxable income for 1951, there also should be included in its 1951 taxable ordinary income the remainder of the settlement proceeds, or $318,762.00, which the corporation reported in Schedule M of its 1951 Federal income tax return as being "Other nontaxable income: Punitive Damages Awarded in Federal District Court for Anti-Trust Suit", and excluded from its taxable income for the year 1951.

OPINION.

Of the amount of $478,142 received by the petitioner in the settlement of the antitrust suit, $132,000 was paid specifically as reimbursement for attorneys' fees. The parties are in agreement that to that extent the recovery constituted ordinary income and that such amount is deductible by the petitioner. The controversy relates to the remainder of the award, $346,142.

In its return for 1951 the petitioner reported one-third of $478,142, or $159,380, as ordinary income. It reported the balance, $318,762, as nontaxable income with the explanation that it represented punitive damages awarded in the antitrust suit. Thereafter, in *Commissioner* v. *Glenshaw Glass Co.*, 348 U.S. 426, the Supreme Court held that the punitive two-thirds portion of a treble-damage antitrust

recovery constitutes taxable income under section 22(a) of the Internal Revenue Code of 1939.

The present position of the petitioner is that no portion of the amount received in settlement constituted punitive damages and that the whole amount, aside from the attorneys' fees, should be regarded as a nontaxable return of capital. It argues that the gravamen of its action in the antitrust suit was the injury and damage to its business generally by the tortious tactics and actions of the defendants, that it was specifically alleged in the complaint that a portion of its business, namely, the goggles business, was destroyed, and that hence the capital invested in that business and the goodwill attaching thereto were injured and destroyed. It is contended, therefore, that the amount received should be regarded as payment in reduction of a loss of capital rather than as taxable income. The petitioner relies principally upon *Farmers' & Merchants Bank* v. *Commissioner*, (C.A 6) 59 F. 2d 912, reversing 20 B.T.A. 622.

The respondent, on the other hand, determined that the full amount of the award constituted ordinary income under section 22(a). On brief he argues principally that the amount received, aside from that received for attorneys' fees, was compensation for lost profits.

The taxability of the proceeds of a lawsuit, or of a sum received in settlement thereof, depends upon the nature of the claim and the actual basis of recovery. If the recovery represents damages for lost profits, it is taxable as ordinary income. However, if it represents a replacement of capital destroyed or injured, the money received, to the extent it does not exceed the basis, is a return of capital and not taxable. *United States* v. *Safety Car Heating Co.*, 297 U.S. 88; *Phoenix Coal Co.* v. *Commissioner*, (C.A. 2) 231 F. 2d 420; *Durkee* v. *Commissioner*, (C.A. 6) 162 F. 2d 184; *Raytheon Production Corp.* v. *Commissioner*, (C.A. 1) 144 F. 2d 110, certiorari denied 323 U.S. 779; *Swastika Oil & Gas Co.* v. *Commissioner*, (C.A. 6) 123 F. 2d 382, certiorari denied 317 U.S. 639; *Arcadia Refining Co.* v. *Commissioner*, (C.A. 5) 118 F. 2d 1010; *Liebes & Co.* v. *Commissioner*, (C.A. 9) 90 F. 2d 932; *Estate of Mable K. Carter*, 35 T.C. 326, on appeal (C.A. 8); *Ralph Freeman*, 33 T.C. 323; *Chalmers Cullins*, 24 T.C. 322; and *Telefilm, Inc.*, 21 T.C. 688.

The respondent's determination that the amount in controversy is taxable as ordinary income is presumptively correct, and the burden of proof was upon the petitioner to show what portion of the amount received, if any, constituted nontaxable income. *Welch* v. *Helvering*, 290 U.S. 111; *Phoenix Coal Co.* v. *Commissioner, supra; Liebes & Co.* v. *Commissioner, supra; Durkee* v. *Commissioner, supra; Ralph Freeman, supra;* and *Chalmers Cullins, supra.*

In the instant case the antitrust suit was tried and damages awarded, but the court granted a motion for a new trial and the case

was settled out of court by the parties. The general release which the petitioner signed specifically designates $132,000 of the lump sum of $478,142 as reimbursement of attorneys' fees. Therein the parties did not specify to what extent, if any, the balance of $346,142 might be allocable to recovery of lost profits, to compensation for injury to capital, or to punitive damages. However, reference was made therein to the fact that such balance was the amount of damages which, upon the trial, the plaintiff had claimed for the period January 1, 1936, through December 31, 1943. This amount was the amount which, at the antitrust trial, the petitioner's president, Sager, testified represented the estimated lost net profits from the goggles business over that period. This indicates strongly to us that the amount of $346,142 received in settlement represented compensation for lost profits. We note also that in filing its return for the year 1951, the petitioner made no claim that any portion represented a reimbursement for loss of capital.

The petitioner on brief makes much of the fact that the complaint in the antitrust suit alleged that there had been damage to its business and property generally through injury or destruction of the goggles business, and the fact that in his charge to the jury the District Court judge stated that the allegation had to do with damage to the petitioner's business or property and that the jury should award damages if it found that the petitioner was excluded from the goggles business. However, as we read the instructions to the jury they are of a general nature and could well contemplate a finding of damages for lost profits. The complaint itself specifically alleges damage for lost profits, in addition to the general allegation of damage to the business and property. In this respect the instant case is distinguishable from the case principally relied upon by the petitioner, *Farmers' & Merchants Bank* v. *Commissioner, supra,* and from *Durkee* v. *Commissioner, supra.* In those cases the taxpayer did not seek reparation for loss of profits, but only for tortious injury to goodwill. In each of those cases, the allegation as to profits before and after the acts complained of was merely an evidential factor in determining actual loss and not an independent basis for recovery.

On brief the petitioner also contends that the testimony of Sager in the instant case is a basis for holding that the recovery to the extent of $346,142 constituted an amount received in reduction of loss of capital rather than ordinary income. Sager testified that the petitioner lost goodwill and patronage of customers in the goggles business, and he estimated the value thereof at $500,000. He also testified that the petitioner had invested an estimated amount of $50,000, including a part of his salary and a part of the salaries of others, in research, equipment, and advertising in the goggles business. He stated that in his opinion the amount received in settlement was not

sufficient to compensate the petitioner for the injury and damage to its business and property. But irrespective of whether the petitioner did in fact sustain some damage to its goodwill or to other capital assets, the ultimate question to be determined here is whether the amount paid in settlement was, to any extent, for such damage. Sager himself testified that he did not participate in the settlement negotiations and the persons who did engage in such settlement did not testify. As stated above, the release itself does not indicate that any portion of the amount agreed upon was compensation for damage to capital.

Upon a consideration of the record as a whole, we cannot conclude that the petitioner has met its burden of showing that any portion of the amount received in settlement was paid as compensation for injury to goodwill or any other capital item. Neither the complaint, nor the release, nor the evidence as a whole provides a basis for making an allocation of the recovery and finding that all or any part represented a return of capital.[2] See *Liebes & Co.* v. *Commissioner, supra; Ralph Freeman, supra;* and *Chalmers Cullins, supra.*

We hold that the respondent did not err in treating the full amount received by the petitioner in settlement as ordinary income.

*Decision will be entered under Rule 50.*

---

[2] In this respect it should also be noted that although Sager testified that the goodwill and patronage of the goggles business which was lost had an estimated value of $500,000, there is no evidence whatever as to the cost or other basis thereof. Thus, even if some portion of the settlement was for damage to capital, such amount would constitute income. It should also be noted that although Sager testified that the estimated amount, including a part of his salary and a part of the salaries of others, which the petitioner had invested in equipment and for research and advertising was $50,000, and that this investment had been lost, there is no evidence to show that whatever amount was so expended, or a part thereof, had not been deducted by the petitioner. If so, any recovery thereof would constitute taxable income.