Abraham Moulton and Ida Moulton, et al. [1] v. Commissioner. Moulton v. Commissioner
Docket Nos. 87477-87481.
United States Tax Court
T.C. Memo 1962-102; 1962 Tax Ct. Memo LEXIS 209; 21 T.C.M. (CCH) 563; T.C.M. (RIA) 62102; April 27, 1962
*209 Sylvan Agatstein; Esq., Railway Exchange Bldg., St. Louis, Mo., for the petitioners. Ray H. Garrison, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Deficiencies have been determined by respondent in the income tax of the respective petitioners for the taxable year 1955 in the following amounts: Docket
No.
Petitioner
Deficiency
87477
Abraham and Ida Moulton
$1,507.05
87478
Goldie Moulton
2,062.64
87479
Eugene and Madeline Multin
1,926.53
87480
Marion J. and Marie M. Cor-
coran
1,967.16
87481
Morris and Bessie Multin
4,078.31
The only issue to be decided is whether a lump-sum amount paid to petitioners in settlement of an action for damages under the antitrust laws of the United States constitutes ordinary income as contended by respondent or capital gain as contended by petitioners. The issue is thus narrowed by petitioners' concession in their opening statement that the payment is income. Findings of Fact All facts which have been stipulated are found as fact. Petitioners Morris Multin, Abraham Moulton, Eugene Multin, and Marion J. Corcoran and their respective wives filed joint *210 Federal income tax returns for the taxable year 1955. In addition, petitioner Goldie Moulton, who is the widow of Isadore Moulton, filed an individual Federal income tax return for the year 1955. These returns, which were prepared on the cash basis, were filed with the district director of internal revenue at St. Louis, Missouri. Petitioners Eugene Multin and Marie M. Corcoran, who is the wife of Marion J. Corcoran, are children of Morris and Bessie Multin, who are the petitioners in Docket No. 87481. In addition, petitioner Morris Multin is a brother of Abraham Moulton, who is a petitioner in Docket No. 87477, and of the deceased husband of Goldie Moulton, the petitioner in Docket No. 87478. Silver Creek Liquor Company was incorporated in Missouri in 1934. The issued and outstanding capital stock of this corporation was owned by Morris Multin and the following members of his family: Bessie Multin Eugene Multin Marie Multin Corcoran Sidney Moulton Abraham Moulton Isadore Moulton This corporation was engaged in the retail liquor business in the St. Louis area until it was dissolved on or about September 30, 1943. At that time all of the corporate assets were distributed *211 in kind to the stockholders in full and complete liquidation. On September 30, 1943, Morris Multin, as a general partner, formed a partnership, known as Silver Creek Liquor Company, hereinafter referred to as Silver Creek, with the following members of his family as limited partners: Bessie Multin Eugene Multin Marie Multin Corcoran Sidney Moulton Abraham Moulton Isadore Moulton Silver Creek was formed to continue the operation of only that part of the corporation business theretofore located in the State of Missouri. The capital that was contributed by the partners consisted only of the assets that came to them in distribution in kind as stockholders through the liquidation of that part of the corporation business and property located and used in Missouri. The value of these assets was not in excess of $150,000. Silver Creek operated approximately 30 retail liquor stores known as 905 Liquor Stores in the St. Louis area from October 1, 1943, until May 26, 1951. It handled standard brands of liquor as well as a varity of alcoholic beverages sold under private labels at more popular prices. These private labels included Cambridge, M & M, Eight O'Clock, Alkazar, and *212 905 barrel whiskey. In May 1951, the partners of Silver Creek sold the operating assets and goodwill of the partnership. In payment therefor the purchaser assumed all the partnership liabilities of an undisclosed total amount and paid the partners the sum of $75,000. According to financial statements prepared by its independent auditors Silver Creek's net profit and the partners' withdrawals as drawings from the partnership for the periods indicated were as follows: Period
Net Profit
Drawings
Fiscal yr. ended 3/31/45
$165,276.35
$219,252.48
Fiscal yr. ended 3/31/46
169,201.67
108,432.31
Fiscal yr. ended 3/31/47
(65,604.45)
104,732.43
Fiscal yr. ended 3/31/48
62,377.54
55,180.39
Period 4/1/48 to 1/1/49
36,152.72
33,535.37
Period 11/28/48 to 1/1/49
28,669.32
Period 4/1/49 to 12/31/49
12,882.74
34,180.83
Fiscal yr. ended 3/31/51
(39,641.83)
40,331.72
Period 4/1/51 to 12/21/51
(1,886.09)
106,147.62
Total
$367,427.97
$701,793.15
On January 10, 1953, and after the sale of Silver Creek's assets, the above-listed partners of Silver Creek, sometimes hereinafter referred to as the Silver Creek group, and 28 other independent retail liquor *213 dealers in the St. Louis area instituted a civil action (No. 8975) in the United States District Court for the Eastern District of Missouri against certain distilleries, distributors, and retailers of liquor. They alleged that the named defendants, which included Glenmore Distilleries Company, Hiram Walker & Sons, Inc., American Distilling Company, National Distillers Products Corporation, Brown-Forman Distillers Corporation, Schenley Industries, Inc., Schenley Import Corporation, and Melrose Distillers, Inc., had violated the Federal antitrust laws. The action was brought under the Sherman Antitrust Act (15 U.S.C.A. 1), the Clayton Act (15 U.S.C.A. 15), and the Robinson-Patman Act (15 U.S.C.A. 13). The Silver Creek group and the other 28 plaintiffs alleged, in pertinent part, in their complaint that: 12. During the times herein mentioned, and for a long space of time prior thereto, no retail liquor store in said area. [St. Louis, Missouri, and vicinity] could successfully compete with the defendant retailers in catering to and supplying and filling the demands and requirements of the consumer public in said area without *214 carrying, selling, and dealing in all or the greater portion of the liquors and products of the defendant distilleries and distributors. 13. During all the times herein mentioned, plaintiffs were able and competent to retail said liquors in St. Louis, Missouri, and vicinity, and plaintiffs and each of them did repeatedly seek and request and offer to buy from the defendant distilleries and distributors their said liquors on the same or equal terms, prices, and conditions of sale as said defendants afforded and gave to the defendant retailers; and plaintiffs, and each of them were, at all times, ready, willing, and able to buy said liquors on said terms, prices, and conditions, but the defendant distilleries and distributors refused, failed, would not, and did not, so sell their said liquors to plaintiffs, and each of them. 14. That, at all times herein mentioned, and for five years before the filing of this Complaint, the defendant distilleries and defendant distributors, while engaged in said inter-state commerce, directly discriminated in price between the said plaintiffs and the defendant retailers, by requiring plaintiffs to pay higher prices per unit for liquors of like grade *215 and quality than the defendant retailers were required to pay for said liquors at the same time, by granting discriminatory discounts and rebates to said defendant retailers, by giving to said defendant retailers discriminatory allowances for advertising and promotional schemes; by furnishing to them discriminatory services, facilities, samples, sales personnel, and others; that the effect of such discrimination substantially lessened competition between plaintiffs and the defendant retailers, and tended to and did create a monopoly in said line of commerce and in said retail business; that the said defendant distilleries and distributors knowingly granted the said discriminations to the defendant retailers, and the said defendant retailers knowingly received the benefits of said discriminations. 15. That said price and other discriminations were sufficient to, and did, enable the defendant retailers to, and they did, undersell the plaintiffs, during said period, on the aforementioned liquors by varying amounts; and as a result thereof plaintiffs have been unable to compete with the defendant retailers and the trade, commerce, traffic, and competition in said liquors have thereby *216 been reduced, diminished, stifled and diverted; as a direct result thereof plaintiffs, and each of them, have suffered reduced sales, volume, traffic and profits; that as a further result plaintiffs have not been able to carry, display, advertise, or sell said liquors, and instead have been required to carry, display, advertise, and sell liquors of lesser quality and consumer appeal obtained from sources other than the defendant distilleries and distributors herein. * * *
21. As a result of the said discriminations, unlawful acts, conduct, conspiracies, monopolies, contracts, plans and arrangements by and between the defendants for the five year period prior to the filing of this Complaint, each of the plaintiffs has been damaged in his business and property in the following amounts, to-wit: - * * * MORRIS MULTIN, BESSIE MULTIN, EUGENE MULTIN, MARIE M. CORCORAN, SIDNEY MOULTON, ABRAHAM MOULTON, ISADORE MOULTON, a limited partnership, known as Silver Creek Liquor Co., formerly d/b/a 905 Liquor Stores - One Million, Five Hundred Thousand ($1,500,000.00) Dollars. that plaintiffs are entitled to recover of the defendants, threefold the said damages and costs, including *217 reasonable attorneys' fees. WHEREFORE, plaintiffs pray: (a) Judgment against the defendants for treble damages, or * * * and for costs, including reasonable attorneys' fees as provided by law; (b) Permanent injunction against the defendants restraining and enjoining them from continuing the said violations of the aforesaid acts. The alleged violations forming the basis for the civil action were claimed to have occurred during the period from January 10, 1948, to January 10, 1953. During the latter part of 1954 the various defendants filed separate answers in which they denied the allegations in the complaint. In addition, they alleged as an affirmative defense that the claim for relief alleged in the complaint was barred by the statute of limitations. The action so instituted was never tried but was instead dismissed as to certain of the defendants by orders of the Court on November 30, 1954, December 15, 1954, January 11 and 20, 1955, March 11 and 18, 1955, and May 13, 1955, in pursuance of covenants not to sue executed by the Silver Creek group on November 22, 1954, December 13, 1954, January 8 and 18, 1955, February 28, 1955, March 11, 1955, and May 12, 1955, respectively, *218 and in consideration of the payment to them by some of the defendants collectively of $108,716.69. Of that amount $53,108.39 was retained as attorneys' fees by the attorneys for the Silver Creek group. In addition the attorneys withheld, pursuant to agreement with the Silver Creek group and other plaintiffs pending disposition of the case against the non-settling defendants, another $2,500 to be devoted to the continued prosecution of the case against non-settling defendants. The balance of the amount recovered, $53,108.30, was paid to the 7 members of the Silver Creek group in equal amounts of $7,586.90. None of the amounts so paid and no portion of the above-mentioned $2,500 were reported as income in any of the petitioners' returns for the year at issue. Prior to the settlement above set forth, the attorneys for the Silver Creek group had engaged in sporadic negotiations toward settlement of these actions. During such negotiation their attorneys upon occasion referred to damage to Silver Creek's business particularly with respect to its goodwill. However, the attorneys placed more emphasis upon the triple damage feature of the claim than upon damage to goodwill. In short, the *219 settlement negotiations devolved into the typical give and take of a horse trade with both parties seeking to arrive at a lump-sum figure which would be acceptable to both. The final figure was arrived at by this method and did not represent a total of sums allocated to any separate feature or features of the claim for damages. Throughout the negotiations the defendants maintained the position that no liability attached to them and considered that the final lump-sum settlement figure represented the nuisance value of the Silver Creek group's suit. In determining the deficiencies in controversy the respondent determined that each of the petitioners herein who was a member of the Silver Creek group received in 1955 as a result of the settlement in part of the above-mentioned suit, ordinary income in the amount of $7,944.04, which amount represents the $7,586.90 actually paid to each plus one-seventh of the $2,500 which the group agreed was to be withheld by their attorneys and to be devoted to the continued prosecution of the case against non-settling defendants. Ultimate Finding No damage to the goodwill or business of Silver Creek as a going concern resulted from any action or *220 nonaction of the defendants complained of in petitioners' antitrust suit filed in the District Court for the Eastern Division of Missouri. The settlement amounts paid to the respective petitioners were paid as the nuisance value of their antitrust suit, were received by them as reimbursement for lost profit, and constituted ordinary income to them. Opinion In his opening statement counsel for petitioners conceded that the amount determined by respondent as having been received by petitioners during the taxable year 1955 in the compromise settlement of their action in the Federal District Court was income even though they had not reported any portion thereof in their income tax returns for that year. The issue then narrows to the sole question of whether that amount, so received, constitutes capital gain as contended by petitioners or ordinary income as urged by respondent. We have found as a fact that the entire amount of the settlement payment to petitioners was to reimburse them for Silver Creek's lost sales and the profit to be expected therefrom. Respondent contends that two-thirds of the settlement amount is in the nature of punitive damages in view of the claim for treble *221 damages incorporated in petitioners' complaint before the United States District Court for the Eastern District of Missouri; that as such that portion is in any event ordinary income. We are unable to agree that any portion of the settlement amount was for payment of treble damages. The settlement was effected by the execution by petitioners to certain of the defendants of covenants not to sue and by dismissal with prejudice of the action as to them by orders of the court entered before trial. The covenants contained an express denial by the defendants of any liability for damages alleged in the complaint. No finding of damage has been made by the court and no assessment of triple damages based thereon. Certain evidence adduced by respondent is to the effect that the settlement amount was based upon the nuisance value of petitioners' suit. Under these circumstances we are satisfied that our finding is correct. We have held in Raytheon Production Corporation 1 T.C. 952, affd. 144 F. 2d 110 (C.A. 1), certiorari denied 323 U.S. 779; Ralph Freeman, 33 T.C. 323; Harry L. Booker, 27 T.C. 932; and Sager Glove Corporation, 36 T.C. 1173, 1180, *222 that where an unallocated amount is received by the taxpayer in settlement of a legal action, the determination as to the purpose of the payment received is controlled in the absence of proof to the contrary by the nature of the claim made by the taxpayer which was settled by the payment and the actual basis of recovery. Resort to the complaint by the petitioners herein in the United States District Court for the Eastern District of Missouri discloses that an action for damages was commenced by them against certain producers, wholesalers, distributors, and retailers of name brand whiskies and liquors charging them under the antitrust laws of the United States with a conspiracy to create a monopoly with respect to the sale to the public by retailers of such name brand whiskies and liquors. It was there alleged that the conspiracy was founded upon price discrimination by the wholesalers among certain retailers. The damage alleged was to the retail business of petitioners in that by virtue of such conspiracy they were unable to obtain at wholesale the name brand whiskies and liquors at the same price at which such brands were sold to certain retail defendants alleged to have so conspired. *223 The damage to petitioners' business was specifically therein alleged to have occurred by way of a lessening of their "sales, volume, traffic and profits." It follows then that we must determine from the complaint so filed in the District Court whether the amount received by petitioners in settlement was for damage to their retail liquor business or, on the other hand, whether the damage sought was intended to replace and reimburse them for profits which they would otherwise have received had the alleged conspiracy not taken place. Of course, in the latter event, there is no contention that the amount received would not constitute ordinary income. Petitioners contend they were forced to sell their retail liquor business because of the alleged price discrimination and inherent in their position is the contention that the sale price obtained by them after the damage compared to the value of their business prior to the alleged damage is the measure of such damage. If petitioners' business as an item of property were damaged, it would be incumbent upon them to establish the measure thereof in order to prevail on this issue. This, they have failed to do. The record does disclose that *224 they received $75,000 on the sale in May 1951 of their business, Silver Creek, which they began in September 1943 with assets valued at not more than $150,000, but the record is silent with respect to the value of their business as a going concern and a capital asset immediately prior to such claimed damage. The consideration paid for Silver Creek was $75,000 cash plus the assumption of all of its debts in an undisclosed total amount. It might well be that if the assumed debts were disclosed, it would be demonstrated that petitioners suffered none of the damages alleged in their District Court complaint. Although petitioners generally allege that by payment of the settlement amount they have been reimbursed for a capital loss, they have not shown any specific damage to any particular business asset which would be a part of their business as a whole which would comprise such a loss, and they have failed to establish a basis for any asset claimed to have been damaged. They do contend and there is some evidence to indicate that in negotiating the settlement here involved their counsel did itemize goodwill as being an asset for which damage was sought. We think this record is clear however *225 that petitioners were not damaged in their goodwill for it seems apparent to us that they had no more than the nominal goodwill which attached to their labels and which was unimpaired by the alleged damage. The very nature of petitioners' complaint in the District Court indicates this fact. They there alleged, in essence, that they were forced to dispose of their business for an amount less than its former value because they were unable at competitive prices to obtain at wholesale and sell at retail the name brand whiskies and liquors set forth in the complaint. The record further shows that they thereupon, before selling the business, attempted to remain in and to conduct their business by the retail sale of "inferior" brands of whiskies and liquors, but that they were unable to continue in business on that basis. At that point whatever goodwill existed with respect to their 905 and other labels should have become effective and demonstrable, but they were obviously ineffective. It seems clear to us from these allegations and the lack of effectiveness of the labels that any goodwill involved in the operation of petitioners' retail liquor store was not appurtenant to the name of their *226 business, any label they may have owned and used, or the personnel conducting their business. Obviously, the goodwill, if any, appurtenant to the conduct of their business attached to the name brands of the liquors and whiskey which they could not obtain and these were not capital assets belonging to the petitioners. If they suffered a loss as a result of the acts and conspiracy alleged in their District Court complaint, that loss was nothing more nor less than a loss of profit or, as alleged in their complaint, sales, volume, traffic and profits, which we construe to mean collectively sales. The settlement amount being characterized by the claims which petitioners were paid to release must then be found to be an amount paid for loss of sales which is tantamount to loss of profit. Decisions will be entered for the respondent. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Goldie Moulton, Docket No. 87478; Eugene Multin and Madeline Multin, Docket No. 87479; Marion J. Corcoran and Marie M. Corcoran, Docket No. 87480; and Morris Multin and Bessie Multin, Docket No. 87481.↩