ROBERT C. ELLIOTT AND JEAN E. ELLIOTT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Elliott v. Commissioner
Docket No. 6077-85.
United States Tax Court
T.C. Memo 1987-333; 1987 Tax Ct. Memo LEXIS 333; 53 T.C.M. (CCH) 1302; T.C.M. (RIA) 87333; July 2, 1987. Robert C. Elliott, pro se. Donna F. Herbert, for the respondent. GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to the provisions of section 7456(d)(3) of the Internal Revenue Code of 1954 (redesignated section 7443A(b)(3) by section 1556 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2755) and Rule 180 et seq. of the Tax Court Rules of Practice and Procedure.[1]
Respondent determined a deficiency in petitioners' *334 Federal income tax for the taxable year 1980 in the amount of $6,599.00. The sole issue for our determination is whether proceeds received by petitioners in 1980 from the settlement of a lawsuit constitutes taxable income. [2]
Petitioners resided in Edmonds, Washington when they filed their petition with the Court. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by reference. Petitioners timely filed their joint Federal income tax return for 1980. In the spring of 1950, Robert C. Elliott (petitioner), who was then a mechanic in Alaska, became commission manufacturers' sales representative for Mac Tools, Inc. (Mac Tools) of Sabina, Ohio, and Mac Allied Tools, Inc. (Mac Allied). Mac Tools, Inc., the parent company, was engaged in the manufacture of mechanics' hand tools -- screwdrivers, wrenches, etc. Mac Allied Tools, Inc., located in Talmadge, Ohio, was a wholesaler or jobber, purchasing tools from other companies *335 and selling them. Petitioner started representing Mac Tools and Mac Allied as a district manager for Alaska. He purchased a starting inventory of tools, bought a truck, a display unit, and started selling Mac Tools. From 1963 to September 30, 1969, petitioner doing business as Mac Tools Sales, a sole proprietorship, was district manager for Mac Tools and Mac Allied in Canada, Montana, Wyoming, North Dakota, South Dakota, and portions of other western states. During these years, petitioners reported their income and expenses on Schedule C -- Profit or (Loss) From Business or Profession -- as "Robert and Jean Elliott, doing business as Mac Tool Sales." Petitioners resided in Winnipeg, Manitoba during most of these years. Sometime in 1963, petitioner established a manufacturing and warehouse facility in Winnepeg, Manitoba. This business operated under the name, Mac Tools Sales of Canada, Limited (Mac Tools Sales). Petitioner acquired the manufacturing and trade rights to produce and to sell Mac Tools in Canada. Petitioner invested $60,000 in the operation and owned 51 percent of the common stock. [3] The remaining shares were owned by employees. *336 By letter dated October 1, 1969, Mac Tools confirmed petitioner's assignment as a district manager responsible for organizing and supervising a sales force of dealers in the states of Washington and Oregon and parts of Idaho. Under this agreement, petitioner relinquished all sales and manufacturing rights in Canada and Alaska. At this time, Mac Tools Sales became inactive and distributed its assets to its shareholders. According to the terms of the October 1, 1969 letter, Mac Tools could terminate petitioner's assignment as district manager upon 30-day written notice. Effective April 30, 1974, petitioner was formally terminated as district manager by Mac Tools and Mac Allied. On March 22, 1974, in anticipation of his termination as district manager, petitioner filed a complaint in the Superior Court of Washington for King County seeking declaratory relief and damages for breach of contract in the amount of $1,000,000. Petitioner alleged that the breach of contract for failure to pay commissions by Mac Tools would cause him a loss of approximately $40,000 to $50,000 per year for the next 20 years. This action was removed on April 26, 1974, to the United States District Court, *337 Western District of Washington. The proceeding in the United States District Court was dismissed without prejudice on August 15, 1974 for lack of jurisdiction over Mac Tools. Petitioner then filed suit against Mac Tools and Mac Allied in the United States District Court of the Southern District of Ohio seeking damages and other relief for his termination as district manager for Washington, Oregon, and portions of Idaho. The complaint filed in the United States district court in Ohio was virtually identical to the one filed in the Superior Court for King County, Washington. The suit in the United States District Court for the Southern District of Ohio was settled by agreement dated November 7, 1975, between petitioners, Mac Tools Sales, Mac Tools, and Mac Allied. The pertinent terms of the settlement agreement were: 1. Mac Tools and Mac Allied agreed to pay petitioners and Mac Tools Sales $150,000 payable as follows: (a) $40,000 to petitioner and $10,000 to Mac Tools Sales, and (b) $20,000 to petitioners in annual installments beginning on August 1, 1976 and ending August 1, 1980. 2. Petitioners and Mac Tools Sales acknowledged that petitioner's termination as district *338 manager for Mac Tools and Mac Allied in Canada became effective as of September 30, 1969. Mac Tool Sales agreed to change its name, destroy all stationery, sales slips, cards bearing the Mac name, and to assign to Mac Tools all of Mac Tools sales right, title, and interest in its corporate name. 3. Petitioners acknowledged that petitioner's termination as district manager for Washington, Oregon, and portions of Idaho became effective April 30, 1974. Petitioners agreed to cease using names "Mac" or "Mac Tools", "Mac Tools Sales" and also destroy all stationery, sales slips, and cards, etc., bearing name "Mac". 4. Petitioners and Mac Tools Sales agreed to release and discharge Mac Tools and Mac Allied from all claims, debts, demands, and causes of action. 5. Petitioners agreed to have the pending case dismissed with prejudice on the execution and delivery of the agreement and the receipt by their attorney of the first payment due. The $20,000 payment in issue is the last installment payment made under the settlement agreement. Petitioners contend that the entire amount of the proceeds represents (1) a return of their investment in Mac Tools Sales when Mac Tools forced them *339 to terminate the Canadian company, and (2) their unrecouped investment in establishing their Mac Tools dealership. Therefore, no part of the recovery is includable in gross income. Respondent, on the other hand, contends that proceeds from the settlement represent lost profits and/or lost commission income, and are therefore taxable to petitioners as ordinary income. In order to determine the tax character of the settlement proceeds of a lawsuit, we must look at the nature of the claims involved and the basis of the recovery. Lyeth v. Hoey,305 U.S. 188 (1938); Estate of Taracido v. Commissioner,72 T.C. 1014, 1022 (1979). It is well settled that if the nature of the claim settled represents damages for lost profits, it is taxable as ordinary income. Estate of Taracido v. Commissioner,supra at 1023; Freeman v. Commissioner,33 T.C. 323, 327 (1959). However, if the nature of the claim settled is received as the replacement of capital destroyed or the sale or exchange of a capital asset, then it is a nontaxable return of capital or taxable as capital gains, respectively. Bresler v. Commissioner,65 T.C. 182 (1975); *340 Sager Glove Corp. v. Commissioner,36 T.C. 1173 (1961), affd. 311 F.2d 210 (7th Cir. 1962), cert. denied 373 U.S. 910 (1963). Respondent's determination that the amount in controversy is all taxable as ordinary income is, of course, presumptively correct and the burden of proof is upon petitioners to show error by a preponderance of the evidence. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Here, the only factual issue before us is whether petitioners have established that all or any part of the settlement amount is a return of capital. Petitioners brought suit to recover $1 million in compensatory damages, for lost commissions of approximately $40,000 to $50,000 per year for 20 years. Based on the record, petitioners have not established that any of the settlement payment received in 1980 is a return of their investments in either Mac Tools Sales or in their sole proprietorship. Since petitioners' complaint stated only the breach of contract action for lost commissions, and since there is nothing in the November 7, 1975 settlement agreement to suggest any other basis for the recovery, the nature of the settlement *341 represents damages for lost profits and is taxable as ordinary income. State Fish Corp. v. Commissioner,48 T.C. 465, 472-473 (1967). Based on the foregoing, respondent's determination is sustained. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect in the year in issue, unless otherwise indicated, and all Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise indicated.↩
2. The mathematical adjustments for charitable contribution deductions, medical and dental expenses, and general sales tax were made due to the increase in petitioners' adjusted gross income.↩
3. At trial, financial documents pertaining to Mac Tools Sales were received into evidence. However, petitioner has not adequately established his unrecouped investment in Mac Tool Sales at the time of its dissolution of business and its distribution of assets.↩