BYRNECE S. GREEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Green v. Commissioner
Docket No. 13089-81.
United States Tax Court
T.C. Memo 1987-503; 1987 Tax Ct. Memo LEXIS 499; 54 T.C.M. (CCH) 764; T.C.M. (RIA) 87503; September 28, 1987. Earl G. Thompson, Alan J. Garfunkel and Marc S. Orlofsky, for the petitioner. Nancy M. Vinocur, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined deficiencies of $ 41,709.93 and $ 253,083.00 in petitioner's Federal income taxes *500 for 1977 and 1978, respectively. The issues for consideration are: (1) whether proceeds received by petitioner in settlement of a claim against an estate are taxable as income under section 61; [1] and (2) if so, whether the attorney's fees necessary for pursuing and realizing the claim are deductible as section 212 expenses. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Byrnece S. Green (hereinafter petitioner) resided in New York, New York, at the time the petition was filed. Petitioner timely filed individual Federal income tax returns with the Andover Service Center, Andover, Massachusetts, for the taxable years 1977 and 1978. On March 24, 1981, respondent issued a notice of deficiency wherein he determined that petitioner had failed to report income in the amounts of $ 139,311.61 and $ 760,688.39 for the taxable years 1977 *501 and 1978, respectively. Petitioner had received these amounts pursuant to a settlement agreement from the estate of Maxwell E. Richmond (hereinafter referred to as decedent). Petitioner first met the decedent on November 18, 1962, in Boston, Massachusetts. Within a few weeks petitioner had fallen in love with him. The decedent returned her affection and by late December the couple were engaged to be married. Ten months later the decedent begged to be released from the engagement, explaining that he had "a mental problem about marriage." He suggested to petitioner that they forego the legal ceremony, and that she "stay with him without marriage." In return, he promised that he would leave her "everything" when he died. Petitioner reluctantly agreed. Petitioner characterized her relationship with the decedent as that of "an old-fashioned traditional wife." Although they always maintained separate apartments, she made his life as comfortable as possible; she watched his diet and his health, cared for him when he was ill, kept track of his appointments and concerned herself with his personal needs. She also accompanied the decedent frequently on business related trips and attended *502 meetings and social engagements with him. They were essentially inseparable for the nine years of their relationship and traveled together in the United States and abroad. The couple celebrated the anniversary of their first date every November. Petitioner, who was employed as a stockbroker, advised the decedent on his business affairs and kept him informed about the value and activity of his investments. Decedent owned and operated a radio station in Boston. Petitioner reported on the stock market activities at his radio station every afternoon. She went to the radio station to wait for him every evening and helped with various tasks. Although petitioner never saw the decedent's will, he promised her that he had provided for her. After he died on October 21, 1971, no will could be found. Several months later the decedent's brother, Richard Richmond, discovered a will which left the entire estate, valued at around $ 7,000,000 to Richard and Dorothy, the decedent's sister. Petitioner sued the estate for the value of services rendered to the decedent in reliance upon his promise to leave her the entire estate. The jury found for petitioner under the theory of quantum *503 meruit and awarded her $ 1,350,000. The only evidence offered to show the value of the services was the inventory of the estate. She maintained that the decedent had himself valued her performance at that amount. The estate appealed the trial court's ruling. The Supreme Judicial Court of Massachusetts upheld the decision, remanding on the sole issue of the measure of damages. The court held that it was erroneous to allow the inventory of the estate as the only measure of damages. Following that decision, petitioner and the decedent's executor settled the claim for $ 900,000 payable over two years: $ 139,311.61 was paid in 1977, and $ 760,688.39 was paid in 1978. Consequently, petitioner withdrew her notice of claim in the probate proceeding. Petitioner did not include these amounts in income on the returns she filed in 1977 and 1978. She did attach a statement to the return explaining why she believed the sums were not taxable. The failure to include these sums in income for taxable years 1977 and 1978 is the basis for respondent's determination of a deficiency. OPINION Respondent's determination of deficiencies in income tax are presumptively correct and petitioner *504 has the burden of proving them erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Based on the record before us, we conclude that petitioner has not met her burden of proof. Respondent determined deficiencies in petitioner's income taxes for 1977 and in 1978 resulting from the amounts she received in settlement from the estate of Maxwell E. Richmond. Respondent maintains that the proceeds were neither a gift, bequest nor devise, but were compensation for services rendered by petitioner to the decedent between the years 1962 and 1971. Petitioner claims, on the other hand, that the services she performed were merely "wifely services" and not compensable services within the meaning of section 61. She contends that the payment was a gift or bequest from the decedent and exempt from taxation under section 102. She further maintains that the fact that she had to press her claim through litigation does not alter its essential character as a gratuitous transfer. We are not required to investigate the relationship between petitioner and the decedent to resolve this question. We have long recognized the rule that "The taxability of the proceeds of *505 a lawsuit, or of a sum received in settlement thereof, depends upon the nature of the claim and the actual basis of recovery." Sager Glove Corp. v. Commissioner,36 T.C. 1173, 1180 (1961), affd. 311 F.2d 210 (7th Cir. 1962), cert. denied 373 U.S. 910 (1963); see also Gidwitz Family Trust v. Commissioner,61 T.C. 664, 673 (1974); State Fish Corp. v. Commissioner,48 T.C. 465, 472 (1967), modified by 49 T.C. 13 (1967). The nature of litigation recovery is determined by reference to the origin and character of the claim which gave rise to the litigation. Lyeth v. Hoey,305 U.S. 188 (1938), Raytheon Production Corp. v. Commissioner,144 F.2d 110 (1st Cir. 1944), affg. 1 T.C. 952 (1942), cert. denied 323 U.S. 779 (1944). [2] See also State Fish Corp. v. Commissioner supra, wherein we relied heavily upon the allegations set forth in the complaint. *506 The proper inquiry is into the nature of the loss in lieu of which the damages were awarded. Fono v. Commissioner,79 T.C. 680, 692 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984); Entwicklungs & Finanzierungs A.G. v. Commissioner,68 T.C. 749, 759 (1977); Henry v. Commissioner,62 T.C. 605 (1974). If the award of damages was a substitute for income then the damages themselves are income. In the instant case, petitioner herself characterized the nature of the claim when she sued the estate as a creditor, claiming compensation for past services rendered. She established that the decedent had promised to provide for her through his will. She introduced evidence of the services she had performed. She proved that although she had performed what she promised, the decedent had reneged on his promises. The jury was fully instructed on the elements of recovery under the theory of quantum meruit and held for petitioner under that theory. Because the underlying claim was a suit for earned, but unpaid compensation, the claim dictates the tax treatment for the income received. [3] We therefore conclude *507 that the settlement payment received in lieu of the damages is taxable income to her for the settlement award can go no further than the underlying claim to which it relates. [4]
Petitioner has urged upon us several alternative analytical approaches which allegedly would allow these settlement payments to be excluded from income. After reviewing these arguments, we find that neither has merit. We first address petitioner's claim that the settlement payments should be excluded from income under section 102. [5] In support of her position, petitioner relies on Pascarelli v. Commissioner,55 T.C. 1082 (1971), a case wherein we held that payments in exchange for "wifely services" are not compensation within the meaning of section 61 even when the provider is not legally a wife. In the Pascarelli case, the taxpayer had lived as though she were a wife with the transferor who supported her. *508 Petitioner's reliance on Pascarelli v. Commissioner, supra, is misplaced. The Pascarelli case is factually distinguishable from the instant case because in Pascarelli we concluded that the lifetime transfers made to the taxpayer were gifts, specifically transfers that "were motivated by sentiments of affection, respect, and admiration," and that conclusion was supported by the testimony of the transferor. 55 T.C. at 1091. In the case herein, however, we have determined, based on petitioner's lawsuit, that she had a compensatory arrangement with the decedent. Thus, the amounts petitioner received from the estate cannot be characterized as gratuitous transfers. We are further asked to consider the arrangement between petitioner and the decedent as an antenuptial agreement. In an antenuptial agreement the parties agree, through private contract, on an arrangement for the disposition of their property in the event of death or separation. Frequently, in exchange for the promises of property, one party agrees to relinquish his or her marital rights in other property. Occasionally, however, the relinquishment of marital rights is not involved. *509 These contracts are generally enforceable under state contract law. See Marvin v. Marvin,18 Cal.3d 660, 557 P.2d 106 (1976). Nonetheless, transfers pursuant to an antenuptial agreement are generally treated as gifts between the parties, because under the gift tax law the exchanged promises are not supported by full and adequate consideration, in money or money's worth. Commissioner v. Wemyss,324 U.S. 303 (1945); Merrill v. Fahs,324 U.S. 308 (1945). Despite initial appeal, we find that this analogy is inapposite. While an exchange of promises was involved in the agreement between petitioner and decedent, there was no contract. In the Massachusetts litigation petitioner was awarded damages under a theory of quantum meruit. The jury was fully instructed on a contract theory of recovery but rejected it. Without a contract there can be no antenuptial agreement. A mere exchange of promises falls short of being an antenuptial agreement. Moreover, it is consistent with petitioner's theory in her litigation with decedent's estate that such exchange of promises be viewed as an arrangement for services to be rendered. Accordingly, *510 after a careful analysis of all the facts and circumstances we hold that the payments petitioner received in settlement of her claim against the estate of Maxwell E. Richmond constitute taxable income to her in the amounts of $ 139,311.61 and $ 760,688.39 during the years 1977 and 1978, respectively. The parties have stipulated that if the payments are deemed to be taxable income, the legal expenses incurred by petitioner are deductible under section 212. Furthermore, the parties agreed that those expenses equalled $ 52,172.19 in 1977 and $ 253,562.74 in 1978. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references refer to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. For example, a suit for damages in recovery for a personal injury results in tax exempt income for the claimant whether the tortfeasor pays damages pursuant to court order or pursuant to a private settlement agreement. Sec. 1.104-1(c), Income Tax Regs.; Seay v. Commissioner,58 T.C. 32 (1972). Similarly, damages which represent a recovery of loss profits or income will be taxed as gain or income regardless of an intervening settlement. Swastika Oil & Gas Co. v. Commissioner,123 F.2d 382 (6th Cir. 1941), affg. 40 B.T.A. 398 (1939), cert. denied 317 U.S. 639↩ (1943). 3. Gross income, as defined in section 61, includes compensation for services. ↩
4. See Wolfson v. Commissioner,T.C. Memo. 1978-445↩. 5. Section 102 excludes from income "the value of property acquired by gift, bequest, devise or inheritance." ↩