ALMEDA COX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Cox v. Commissioner
Docket No. 10861-78.
United States Tax Court
T.C. Memo 1980-244; 1980 Tax Ct. Memo LEXIS 343; 40 T.C.M. (CCH) 619; T.C.M. (RIA) 80244; July 9, 1980, Filed *343 Petitioner applied for and received tentatives refunds of income taxes paid in 1972 and 1973 as a result of alleged net operating loss carryback deductions from 1975 and 1976, respectively. Respondent later determined that after certain adjustments petitioner's net operating loss for 1975 was much less than claimed by petitioner in her refund application and that petitioner did not have a net operating loss for 1976. Deficiency determinations for carryback years 1972 and 1973 resulted. Held, the sources and applications of funds method is an acceptable method of income reconstruction, was applicable to the instant case and was properly applied by respondent to petitioner's 1975 taxable year; heldfurther, petitioner is not entitled to depreciation deduction in 1975 which would have reduced her adjusted basis in the depreicated asset below a reasonable salvage value; heldfurther, the correct amount of net operating loss carryback deduction from 1975 determined; heldfurther, petitioner did not have a net operating loss for 1976; heldfurther, petitioner is not entitled to a jury trial; heldfurther, this Court is without jurisdiction to award court costs to petitioner. Almeda *344 Cox, pro se. Diane L. Fox, for the respondent. BRUCE MEMORANDUM FINDINGS OF FACT AND OPINION BRUCE, Judge: Respondent determined deficiencies of $1,022.61 and $869.02 in petitioner's Federal income taxes for taxable years 1972 and 1973, [1] respectively, as set forth in his statutory notice of deficiency dated June 26, 1978. Due to the absence of concessions by the parties in this matter and due to the broad sweep of petitioner's request for deficiency redetermination set forth in her petition [2] in this case, many issues are presented for our decision: (1) whether petitioner is entitled to a net operating loss carryback from 1975 to 1972 in an amount greater than $64.26 which entails (a) whether respondent's method of income reconstruction which found petitioner's gross income understated by $3,532.69 was proper, (b) whether petitioner was entitled to a depreciation deduction on a piano, and (c) whether petitioner properly applied the carryback of the net operating loss; (2) whether petitioner is entitled to a net operating loss carryback from 1976 to 1973; (3) whether petitioner was entitiled to a trial by jury in this case; and (4) whether petitioner is entitled to payment of witness *345 costs or other costs of pursuing this court action. FINDINGS OF FACT Petitioner was a resident of Ossian, Indiana at all times relevant to this case. She timely filed her joint Federal income tax returns, with her husband, for the taxable years 1972, 1973, 1975 and 1976 with the Internal Revenue Service Center in Memphis, Tennessee. During those years, petitioner operated as a sole proprietorship *346 a florist shop in Ossian known as Echo Gardens Florist. Petitioner's Federal income tax returns for 1975 and 1976 contained the following figures: 1975
1976
Form 1040 - line 11 - Interest Income
$ 142.47
$ 218.89
line 32(b) - Fully
taxable pensions and
annuities
8,631.00
Schedule A - Itemized deductions
520.61
Schedule C - Profit or (Loss) From
Business or Profession
7,106.99
(4,000.92)
Schedule E - Supplemental Income
Part I - Pensions and Annuities
2,955.60
Part III - Income or (Loss) from
Estates, etc.
(1,209.33)
Schedule F - Farm Income and Expenses
154.44
Three personal exemptions, including one for petitioner's blindness, were claimed correctly in calculating taxable incomes for 1975 and 1976 on each of the returns. Petitioner also included these three personal exemptions in calculating the net operating loss carryback from 1975 to 1972. Included in the business loss shown on Schedule C of petitioner's 1975 return was a $400.00 depreciation deduction claimed on a piano acquired in 1973 for $1,245.00 on which prior years' depreciation deductions of $800.00 had been taken. On January 26, 1976, petitioner filed Form 1045, Application for Tentative Refund, requesting a net operating loss carryback *347 deduction to 1972 from 1975 in the amount of $6,625.09. This amount was a direct application of the final negative figure for taxable income on petitioner's 1975 return. Petitioner received a payment of $1,034.63 plus $88.74 interest on March 1, 1976, as a result of filing the Form 1045. Another Form 1045 was filed on August 8, 1977, requesting a net operating loss carryback deduction to 1973 from 1976 in the amount of $5,210.25. This figure was the sum of petitioner's business loss for 1976 and a loss distributed to petitioner from an estate in 1976. On September 26, 1977, as a result of filing the second Form 1045, petitioner received a payment of $869.02 plus $42.72 interest. In 1977, the Internal Revenue Service (IRS) began an audit of petitioner's Federal income tax returns for the years 1972, 1973, 1975 and 1976. Examination of the 1976 return showed that petitioner did have a business loss of $4,000.92 and a loss from an estate of $1,209.33 which totaled $5,210.25, the amount of net operating loss carried back to 1973 by petitioner. However, review of the entire return showed that petitioner's income exceeded her deductions for 1976. Therefore, although no deficiency *348 resulted for 1976, respondent did determine that petitioner was not entitled to the carryback to 1973 claimed, resulting in the contested deficiency for 1973. The examination of petitioner's 1975 return was not as simple. In that examination, the IRS employed the sources and applications of funds method of reconstructing income, finding that petitioner had understated income for 1975 in the amount of $3,532.69.[3] *349 Further, respondent disallowed the $400.00 depreciation deduction for the piano, mentioned above. The respondent also excluded from the calculation of the claimed net operating loss carryback from 1975 to 1972 the three personal exemptions for 1975 ($2,250.00) and excess nonbusiness deductions for 1975 ($378.14). These adjustments, as determined by respondent, reduced the applied net operating loss carryback from 1975 to 1972 from $6,625.09 to $64.26, resulting in determinations of no deficiency for 1975 and the contested deficiency for 1972. ULTIMATE FINDING OF FACT Petitioner and her husband had unreported income in the amount of $3,532.69 during the 1975 taxable year. OPINION Before we deal with the proper issues in this case, we find it necessary *350 to comment upon petitioner's conduct throughout the entire history of the matter before us. From the start of the examination of the returns in question to the present, petitioner has badgered Senators, Congressmen, the employees of the IRS and the employees of this Court with her repeated demands for attention and service, often in matters irrelevant or immaterial to the determination of her tax liability for the years under examination. Because of her demands and her handicap of blindness, petitioner has received more attention and deference than the average taxpayer should expect. Indeed, most, if not all, of respondent's doubts confronted during his examination were resolved in petitioner's favor. Meanwhile, petitioner has refused to reciprocate with the same courtesy which she so obstinately demands for herself. She has failed to meet with respondent in a cooperative atmosphere, with the result that this Court is faced with a number of issues which could have been settled. Further, without cooperation between the parties, no stipulation of facts was reached as required by Rule 91, Tax Court Rules of Practice and Procedure.
We are convinced that, due to petitioner's unwillingness *351 to listen to and to work with respondent's employees, petitioner has totally failed to grasp the legal mechanics of the situation with which she is faced. Petitioner decided to represent herself, without benefit of legal counsel. This decision cannot be used against her, but neither can it be used for her. Petitioner's decision to appear prose does not relieve her of any of the burdens or responsibilities of the law or of the rules of this Court. Coussement v. Commissioner,391 F. 2d 227 (C.A. 6, 1968), affirming a Memorandum Opinion of this Court; Wallis v. Commissioner,357 F. 2d 313 (C.A. 10, 1966), affirming a Memorandum Opinion of this Court; Rushing v. Commissioner,214 F. 2d 383 (C.A. 5, 1954), affirming a Memorandum Opinion of this Court. She must suffer, without relief, the consequences of her choice. Petitioner's refusal to cooperate led to her misunderstanding of the task before her. Her incessant ramblings at trial prevented this Court from extending any guidance or assistance to her. Time and time again, petitioner ignored the Court's request at trial for factual evidence and insisted upon presenting a repetitious litany of derogatory personal comments and criminal *352 accusations directed at various employees of the IRS. This repetitious tirade was continued throughout her post-trial documents, which were received and filed as her Brief and Reply Brief, even though they contained little or no substance relative to the issues of this case. This Court is not the proper forum for any criminal accusations which petitioner may have against respondent [4] and no court should be used for the staging of such malicious attacks against the reputations of individuals, whatever their positions in life. Perhaps, if petitioner had used her energies and abilities constructively in the presentation of her case, she would have fared better. She did not. We have no choice but to deal with her case as she has presented it to us. The first issue for our decision is the size of petitioner's net operating carryback loss deduction in 1972 from 1975. Petitioner claimed a deduction of $6,625.09. Respondent, in three adjustments, determined that the deduction should be no more than *353 $64.26. We agree with respondent. Respondent's first adjustment, in lowering petitioner's net operating loss carryback deduction for 1972, was a determination that petitioner had understated income for 1975 by $3,532.69. To make this determination, respondent used the sources and applications of funds method of reconstructing income. This method is just what its name implies. First, the revenue agent calculates the difference, if any, between total reported funds sources, such as gross receipts, interest income, new or increased loans and decreases in cash and back accounts, and total reported funds applications or uses, such as expenses paid for in cash or increased liabilities, decreased loans and increased cash and back accounts. Operating under the assumption that sources of funds should at least equal uses of funds, the agent determines that any excess of uses which is unexplained by a showing of counterbalancing additional tax exempt income, new loans, or fewer expenses requiring funds outlays, is the amount of an understatement of income. Although petitioner does note that the figures used by respondent in the income reconstruction are only estimates, she does not refute *354 the accuracy of those figures and did not introduce at trial evidence contrary to the figures. However, petitioner vigorously contests the way in which those figures were used. She contends that the reconstruction violates various sections of the13 Internal Revenue Code by misapplying amounts such as personal living expenses, nontaxable pension income, and depreciation expense and by omitting entirely consideration of petitioner's inventories. Further, petitioner contends that the entire income reconstruction was prepared without her knowledge and consent. Petitioner's protests are severely misguided. The sources and applications of funds method of reconstructing income has been approved many times in the past. [5] *356 See, United States v. Johnson, 319 U.S. 503, 517, rehearing denied 320 U.S. 808 (1943); Viles v. Commissioner, 233 F. 2d 376 (C.A. 6, 1956); Vassallo v. Commissioner, 23 T.C. 656 (1955). Where, as here, petitioner's records of income and expense appear inaccurate or inadequate, respondent is authorized under section 446 [6] to determine petitioner's income in accordance with any method which in his opinion will clearly reflect the entire income amount. Schroeder v. Commissioner,40 T.C. 30, 33 (1963); *355 Sutherland v. Commissioner,32 T.C. 862, 867 (1959); Vassallo v. Commissioner, supra, at 662; Lipsitz v. Commissioner, 21 T.C. 917, 931 (1954). The sources and applications of funds method of reconstructing income is not an accounting method, nor is it a substitute for one. Holland v. United States, 348 U.S.121, 131 (1954); Vassallo v. Commissioner,supra, at 661, Lipsitz v. Commissioner, supra. Instead, it is merely a tool by which respondent establishes evidence in support of an approximation of taxpayer's gross income from all sources. Funds from these sources, including nontaxable items, loans and depleted savings, are, in total, compared with a similar total of those expenditures, deductible or not, requiring funds. This total excludes depreciation. Both the inclusion of nontaxable sources and the exclusion of expenditures, such as depreciation, which do not require funds are advantageous to the taxpayer, for any excess of known expenses over known funds leads to respondent's determination that *357 additional funds must have been unreported by the taxpayer. Unless a reduction of expenses is explained or the excess is shown to have been satisfied by some nontaxable source of funds, respondent determines that the taxpayer's gross income subject to tax was understated at least in the amount of the unexplained excess. The final figure of respondent's reconstruction serves as evidence of the taxpayer's gross income. It is this figure to which the provisions of the Internal Revenue Code are applied to determine the taxpayer's tax liability. During this determination process the various provisions cited by petitioner are used. Nontaxable income is omitted and all applicable deductions and exemptions are used to the extent the taxpayer is entitled. Respondent must follow these specific statutory provisions during this portion of the determination process, and in the instant situation we find that he did. However, respondent is not under any restriction, save reasonableness, in reconstructing income from which tax liability is eventually derived. Campbell v. Guetersloh, 287 F. 2d 878 (C.A. 5, 1961); Harbin v. Commissioner, 40 T.C. 373 (1963). Petitioner's vehement arguments demanding *358 the application of various Internal Revenue Code provisions in respondent's reconstruction of income are totally inapposite.Lacking any evidence of the accuracy, or even the existence, of petitioner's accounting records, we find that respondent's decision to reconstruct income, his choice of methods for this task and his implementation of those methods were properly suited to the situation presented. Petitioner's arguments that respondent failed to use her inventories in his computations and that respondent conducted the reconstruction without her knowledge and consent are equally groundless.We disposed of the same inventory argument 25 years ago in Vassallo v. Commissioner, supra, at 662, where we said: While we agree with petitioners that the respondent's reconstruction of Vassallo's income by such methods would have been more exact had its actual inventories been included, the respondent, under the authority granted him in section 41 [now 446] of the Code, determined such income on the cash basis -- the method which, in his opinion, most clearly reflected it. It was incumbent on the petitioners to show the amount of the inventories which they argue, if used, would more correctly *359 reflect income. They made no such showing and we, therefore, approve the respondent's determination.
Petitioner's "knowledge and consent" argument must also fail. Respondent is authorized to perform certain necessary tasks to ascertain the correctness of returns and to determine any outstanding tax liabilities. While there are restrictions on respondent's performance of these tasks, the requirement of the taxpayer's consent is not one of them. See generally, sections 7601-7655. Petitioner knew of the examination in question and supplied some of the figures used by respondent. The possibility that petitioner was unaware of respondent's use of these figures, such as in the income reconstruction, is of no consequence. We have already found respondent's methods reasonable and not arbitrary or capricious.A greater understanding by petitioner, or even by this Court, of respondent's specific methods of operation is not necessary for establishing the validity of respondent's determination and, therefore, is not within our jurisdiction. Flynn v. Commissioner, 40 T.C. 770 (1963); Crowther v. Commissioner, 28 T.C. 1293 (1957), affirmed on this point, 269 F. 2d 292 (C.A. 9, 1959). Respondent *360 is not reqauired to show the probable source for the unreported income in a civil case not involving fraud, such as the instant one. United States v. Massei, 355 U.S. 595 (1958); Ehlers v. Vinal, 382 F. 2d 58 (C.A. 8, 1967); Gatling v. Commissioner, 286 F. 2d 139 (C.A. 4, 1961), affirming a Memorandum Opinion of this Court. On the contrary, the burden is upon petitioner to either prove that there was no unreported income or that such income was nontaxable. Thomas v. Commissioner, 223 F. 2d 83 (C.A. 6, 1955); Durkee v. Commissioner, 162 F. 2d 184 (C.A. 6, 1947); Sager Glove Corp. v. Commissioner, 36 T.C. 1173 (1961), affirmed 311 F. 2d 210 (C.A. 7, 1962), certiorari denied 373 U.S. 910 (1963). Petitioner having failed to meet this burden, respondent's determination that petitioner had unreported income of $3,532.69 is sustained. Petitioner claimed a depreciation deduction in 1975 of $400.00 on a piano. Depreciation deductions are allowed under section 167 as a "reasonable allowance for the exhaustion, wear and tear, or obsolescence of property used in a trade or business." However, "[an] asset shall not be depreciated below a reasonable salvage value. " Section 1.167(a)-1(a), Income Tax Regs. *361 See also, section 1.167(a)-1(c), Income Tax Regs.; United California Bank v. Commissioner, 41 T.C. 437, 451 (1964), affirmed 340 F. 2d 320 (C.A. 9, 1965). Petitioner's original basis in the piano was $1,245.00 and petitioner had claimed $800.00 in depreciation prior to 1975, leaving an adjusted basis of $445.00. It is petitioner's burden to prove the claimed depreciation deduction. Lockhart v. Commissioner, 43 T.C. 776 (1965); Brown v. Commissioner, 40 T.C. 861 (1963); Brandtjen & Kluge, Inc. v. Commissioner,34 T.C. 416 (1960). Petitioner offered no proof of the piano's salvage value. Without such proof, salvage value will not be estimated at zero. Lockhart v. Commissioner, supra.We make no other finding as to the piano's salvage value, except to say that we are certain the salvage value is at least $445.00. Petitioner is not entitled to depreciation deduction for the piano for 1975. The proper computation and application of a net operating loss carryback can be a complicated matter. A net operating loss for an individual is defined by section 172(c) as the amount, as modified under section 172(d), by which deductions taken to determine taxable incme exceed gross income. [7] *362 Two of the section 172(d) modifications exclude from the calculation of a net operating loss the deduction for personal exemptions and nonbusiness deductions in excess of nonbusiness income. Section 172(d)(3) and (4). Respondent determined that petitioner failed to exclude these amounts from her figures when calculating her net operating loss for 1975. Thus, respondent contends, petitioner overstated her net operating loss for 1975 by a total of $2,628.14, $2,250.00 for personal exemptions and $378.14 in excess nonbusiness deductions. Since petitioner, who bears the burden of proving that she is entitled to the deduction, has failed to introduce any evidence or other justification for her calculations, we have no choice but to uphold respondent's determination that petitioner's net operating loss deduction for 1975 applicable to 1972 was only $64.26. [8]Kasey v. Commissioner, 54 T.C. 1642, 1650 (1970), affirmed per curiam 457 F. 2d 369 (C.A. 9, 1972); Sutherland v. Commissioner, 21 B.T.A. 167 (1930); Rule 142(a), Tax Court Rules of Practice and Procedure. No *363 deficiency for 1975 is created by these adjustments, but the resultant deficiency in the carryback year, 1972, is sustained.
*364 Similarly, we agree with respondent's disallowance of petitioner's net operating loss carryback deduction for 1973 from 1976. In calculating her claimed net operating loss for 1976, petitioner merely summed two losses suffered in 1976, one from her business and one from an estate, without regard to the fact that she had sufficient gross income for 1976 from other sources to offset those losses. Section 172(c); Mendelson v. Commissioner, 21 B.T.A. 958 (1930); Haskell v. Commissioner, 7 B.T.A. 697 (1927). Petitioner again failed to offer any explanation for her claims. She had no net operating loss for 1976 and, therefore, no net operating loss deduction applicable to 1973. The resultant deficiency determination for 1973 is sustained. Finally, petitioner has repeatedly requested her "rights" to a trial by jury and to reimbursement of her court costs. First, it is well settled that petitioner is not entitled to a trial by jury in the Tax Court. When a petitioner files a petition instituting a Tax Court proceeding, she has chosen to forego a jury trial. While a jury trial may have been requested in another court in a refund that after payment of the contested tax amount, such is *365 not the case in the Tax Court. Swanson v. Commissioner, 65 T.C. 1180 (1976). Petitioner will not be heard to complain of the consequences of her own choices. Petitioner's request for reimbursement of court costs must also be denied. This Court is not authorized to award attorney's fees or any other costs to a petitioner, even if she is successful in her case. Key Buick Co. v. Commissioner, 68 T.C. 178 (1977), affirmed 613 F 2d 1306 (C.A. 5, 1980); Sharon v. Commissioner, 66 T.C. 515, 533-534 (1976), affirmed per curiam 591 F. 2d 1273 (C.A. 9, 1978), certiorari denied 442 U.S. 941 (1979). [9]
To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Although the petition specifically contests deficiencies for 1975 and 1976, there were none. Deficiencies were determined for 1972 and 1973 as the result of reducing net operating loss carryback deductions from 1975 and 1976. This explains why the deficiencies for 1972 and 1973 are not barred by the statute of limitations. Sec. 6501(h), I.R.C. 1954↩. This may also explain petitioner's confusion in her petition. Therefore, we proceed on the assumption that she is contesting the deficiencies determined for the year 1972 and 1973. 2. Petitioner had her husband jointly participated in all of the transactions and forms relevant to this case, except for the petition herein, in which petitioner stands alone. Subsequent mention of actions taken by petitioner will refer to those joint actions.↩
3. The income analysis for 1975 is set forth below.Petitioner does not contest the accuracy of the figures, although she does contend that the figures were gathered and the analysis conducted without her knowledge or consent. Application of Funds: Increase in Cash on Hand
$0
Increase in Ossian State Bank -
Acct. #100315
175.88
Increase in Lincoln Nat'l. Bank &
Trust-Acct. #9-416-491-0
32.39
Increase in Grissom Federal
Credit Union
110.09
Business Expenses Per 1975 Tax
Return (Form 1040)
9,561.76
Less: Expenses Claimed Not Requiring
An Outlay of Funds
(Depreciation) - 1975
Form 1040
(2,925.00)
6,636.76
Purchases per Schedule C
(1975 - Form 1040)
4,934.98
Labor Per Schedule C (1975 - Form 1040)
6,500.00
Payments on Principal of Home Mortgage
880.85
Personal, Living, & Family Expenses
6,672.51 *
Payments on Principal of Building
721.47
$26,664.93
Less Source of Funds: Gross Receipts, Schedule C
(1975 - Form 1040)
13,851.90
Pension (Including Non-Taxable
Portion - Form W2-P)
6,297.00
Gross Receipts, Schedule F
(1975 - Form 1040)
154.44
Interest Income (1975 - Form 1040)
142.47
Federal Income Tax Refunds Received)
1,778.17
Decrease in Cash on Hand
0
Decrease in Ossian State Bank
Acct. #20-352-1
908.26
Total Source of Funds
23,132.24
Surplus of Application of Funds
over Sources of Funds
$ 3,532.69
* The Personal, Living, & Family Expenses were listed as follows: ↩
Food
2,860.00
Outside Meals
936.00
Insurance on home
40.00
Repairs on home
114.38
Utilities on home
977.81
Hot Water Heater
71.30
Auto Expense
242.50
Newspapers, Magazines
27.90
Payment on Insurance Loan
7.97
Lions Club Dues & Luncheons
55.00
Tobacco & Liquor
135.00
Real Estate Taxes
147.14
Medical Expense
515.04
Clothing
155.00
Hair Care
285.00
Home Mortgage Interest
92.47
Miscellaneous
10.00
Total
$6,672.51
4. For a recent discussion of jurisdiction over a similar claim in the proper court see Reith v. Prentice, F. Supp.     ( N.D. Ind., Jan. 17, 1980, 45 AFTR 2d 80↩-832, 80-1 USTC par. 9182).
5. The Fifth Circuit has disallowed this method of income reconstruction in some instances. See, Olinger v. Commissioner, 234 F. 2d 823 (C.A. 5, 1956); Bostwick v. United States, 218 F. 2d 790 (C.A. 5, 1955); Dupree v. United States, 218 F. 2d 781 (C.A. 5, 1955). However, these cases involved the issued of civil fraud, tax evasion and criminal fraud, respectively, all of which place the burden of proof upon respondent. Disallowance of the income reconstruction resulted from respondent's failure to carry that burden in the manner specified by the Supreme Court in Holland v. United States, 348 U.S. 121 (1954). The instant case is a civil action for the redetermination of a deficiency and does not involve any issues of civil fraud or criminal activity. To be acceptable, respondent's decision to reconstruct income and his choice of methods need not follow any set pattern or restrictions. Campbell v. Guetersloh, 287 F. 2d 878, 880 (C.A. 5, 1961).The reconstruction of income and the correlative deficiency determination are rebuttably presumed to be correct unless they are arbitrary and unreasonable; the burden is upon petitioner either to show that the conclusions of respondent were unreasonable and arbitrary or to rebut the presumption of their correctness. 6. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
7. SEC. 172. NET OPERATING LOSS DEDUCTION. * * *
(c) Net Operating Loss Defined.--For purposes of this section, the term "net operating loss" means the excess of the deductions allowed by this chapter over the gross income.Such excess shall be computed with the modifications specified in subsection (d). (d) Modificlations.--The modifications referred to in this section are as follows: * * *
(3) Deduction for Personal Exemptions.--No deduction shall be allowed under section 151 (relating to personal exemptions). No deduction in lieu of any such deduction shall be allowed. (4) Nonbusiness Deductions of Taxpayers Other than Corporations.--In the case of a taxpayer other than a corporation, the deductions allowable by this chapter which are not attributable to a taxpayer's trade or business shall be allowed only to the extent of the amount of the gross income not derived from such trade or business. ↩
8. This figure results from all of respondent's adjustments for 1975 as follows: ↩
Petitioner's claimed net operating loss
$6,625.09
Less: Understated income
$3,532.69
Depreciation disallowed
400.00
Section 172(d) adjustments
2,628.14
6,560.83
Respondent's determination
$ 64.26
9. See also Ellis v. Commissioner, T.C. Memo 1980-145; Estate of Knudsen v. Commissioner, T.C. Memo 1980-216↩.